HANNAH A. LOVEJOY *et al. vs.* JOHN H. McDONALD *et al.*

Argued Oct. 17, 1894.   Affirmed Dec. 13, 1894.

No. 8853.

**Will construed to empower executors to convey land.**
> *Held*, taking the will involved in this case as a whole, that the executors thereof had full power and authority to sell and convey the premises in dispute for the purpose of paying claims against the estate, which was insolvent.

**Estoppel by conduct.**
> *Held*, further, that, if such power and authority had not been conferred by the terms of the will, plaintiffs, widow and children of the decedent, could not, under the facts herein, recover the real property so conveyed.

Appeal by plaintiffs, Hannah A. Lovejoy, Loren K. Lovejoy, Frank L. Lovejoy, Arthur Lovejoy and Mary E. Winston, from a judgment of the District Court of Hennepin County, *Henry G. Hicks*, J., entered March 23, 1894, denying the relief they sought.

James A. Lovejoy died testate January 29, 1886, leaving the plaintiff Hannah A. Lovejoy, his widow, and the other plaintiffs, his children, his heirs at law. He owned lots 6, 7, 8 and 9 in block 28 in St. Anthony Falls, now part of Minneapolis. He had long resided on lots 8 and 9. They were his homestead. Lots 6 and 7 were vacant, unimproved. He made his will March 24, 1885, and therein directed that all his just debts be paid. He gave his wife the four lots for her natural life and the remainder in fee to his children. He also gave his wife and children severally large bequests and made various specific bequests to relatives and authorized his executors, in case they deemed it expedient, to convert the residue of his estate into money and divide it equally among his four children. By it he further provided as follows:

"Item 8. My executors or the survivors or survivor of them shall have full and complete power and right to make, execute and deliver any and all deeds, releases, mortgages, agreements, and to do any and all acts and things that may be necessary for the purpose of carrying out the full intention of this will and all and every part thereof, as I repose in them all trust and confidence."

He then appointed Winthrop Young, O. C. Merriman and Jeremiah J. Howe executors and directed that they be allowed to act without bond or surety. On July 3, 1885, he made a codicil as follows:

"Item IX. I hereby authorize, empower and direct the executors of my will to carry on my copartnership business in which I have been for years, and am now, engaged with Sumner W. Farnham under the firm name of Farnham & Lovejoy, for such length of time as to my said executors may seem necessary and expedient and for the best interest of my estate and my said copartnership business, hereby giving full and complete authority to my said executors to join with my said copartner in the execution of any and all contracts, deeds, mortgages, leases, releases, notes, bonds, and all other papers and instruments that may become necessary for the proper conduct of said business; for the sale or mortgaging of firm pine lands and stumpage, for the purpose

of borrowing money for said business, and renewing and continuing any firm indebtedness that there may be at my decease, and for doing any and all other acts that may be deemed necessary and advisable by my said executors in and about said copartnership business."

The will and codicil were on March 8, 1886, proved and admitted to record in the Probate Court of Hennepin County. The executors accepted the trust and entered upon the discharge of their duty. On April 28, 1886, they filed an inventory and appraisal of the estate, wherein lots 6 and 7 were entered and appraised at $9,000. The whole estate was appraised at $46,411.70. Claims were filed and allowed against the estate aggregating $79,507.76 among which were the following: Loren K. Lovejoy, $502.65; Frank L. Lovejoy, $197.47; Mary E. Winston, $2,639.57; Hannah A. Lovejoy, $3,757.52. But Loren K. Lovejoy was indebted to the estate and the balance was eventually found to be against him. The widow and children have long resided in Minneapolis.

The executors assuming to have power under the will and codicil sold lots 6 and 7 on May 11, 1887, to Charles H. Pratt for $11,000, received the money and gave him a deed thereof, referring in it to the will as their authority to convey. It was recorded two days thereafter. He in 1891, sold and conveyed to the defendant, Maggie McDonald, the east 55 feet and to John H. McDonald, her husband, the residue of these two lots, and they in that year built a dwelling house on her part of the lots and have since occupied it as their residence. On July 31, 1890, the executors filed their final account in which they charged themselves with the $11,000 received for the two lots. Their total receipts were $38,150.61, all of which they had paid to creditors except $3,455.37 and this was also subsequently distributed. After due notice and examination, the account was allowed as filed and on December 20, 1892, the executors were discharged.

On January 20, 1893, the plaintiffs commenced this action under 1878 G. S. ch. 75, § 2, against John H. McDonald, Maggie McDonald his wife, Charles H. Pratt, Winthrop Young, O. C. Merriman and Jeremiah J. Howe, to determine their adverse claims, if any, to the west or front 110 feet of the lots 6 and 7 alleging the property to be vacant and claiming to own the same in fee. Defendants

McDonald and wife answered asserting their title. The other defendants disclaimed any interest or estate therein. The issues were tried May 24, 1893, findings were filed and judgment afterwards entered that plaintiffs take nothing and confirming McDonald's title. From that judgment plaintiffs take this appeal.

*Little & Nunn*, for appellants.

The sole question involved in this action is the legal title to the front 110 feet of lots 6 and 7. The court finds the title to have been in James A. Lovejoy at the time of his death. That by his will he devised the same to his wife, Hannah, for life; with remainder in fee to the other plaintiffs. His wife having died since the trial and judgment, her life estate has terminated and the other plaintiffs are owners in fee thereof.

The executors had in fact no power or authority under the will or from any source to sell or convey this property. They had no power to sell any of the real estate, except for the purpose of paying certain legacies provided for in the will. A power can be exercised only in the manner and for the precise purpose prescribed and intended by the testator. *Hetzel* v. *Barber*, 69 N. Y. 1; *Russell* v. *Russell*, 36 N. Y. 581; *In re McComb*, 117 N. Y. 378; *Wilkinson* v. *Buist*, 124 Pa. St. 253; *Cranstone* v. *Crane*, 97 Mass. 459.

The direction in the will that his debts be paid did not charge the real estate with the debts. The statute charges real estate with payment of debts of decedent. The introductory words directing payment of debts are superfluous. *Gates* v. *Shugrue*, 35 Minn. 392; *Harmon* v. *Smith*, 38 Fed. Rep. 482; *Harris* v. *Douglas*, 64 Ill. 466.

Had the testator's debts been made by the will a charge on his real estate that would not confer on the executors a power to sell real estate. *In re Fox*, 52 N. Y. 530; *Worley* v. *Taylor*, 21 Oregon 589; *Hill* v. *Den*, 54 Cal. 6; *Buckley* v. *Buckley*, 11 Barb. 43.

The will does not authorize or empower the executors to sell this property. The testator devises a life estate in this property to Mrs. Lovejoy and the remainder in fee to the other defendants, his children. These lots being devised specifically to the plaintiffs are excepted from the operation of the power of sale in the will. *Ellis* v.

*Page,* 7 Cush. 162; *Hubbell* v. *Hubbell,* 9 Pick. 561; *Anderson's Ex'rs* v. *Anderson,* 31 N. J. Eq. 560; *Ferry* v. *Laible,* 3 N. J. Eq. 566; *Officer* v. *Simpson,* 27 Minn. 147.

If the executors acted under the advice of incompetent and uneducated lawyers in selling these lots, that error should not be cured by an equally erroneous decision of this action.

Whether the findings or the testimony is taken as a basis for examination there is lacking nearly every essential element of an estoppel. What act or omission of plaintiffs induced Pratt or McDonald to purchase the property? The plaintiffs must have done or failed to do something upon which Pratt relied and acted in order to estop them from claiming their property. *Stuart* v. *Lowry,* 42 N. Y. 473; *Jewett* v. *Miller,* 10 N. Y. 402; *Whitacre* v. *Culver,* 8 Minn. 133; *Sutton* v. *Wood,* 27 Minn. 362; *Pence* v. *Arbuckle,* 22 Minn. 420; *Dean* v. *Crall,* 98 Mich. 591.

The burden of making out an estoppel is on the party claiming it. If the plaintiffs had known of the sale to Pratt, as the court finds, and remained silent, it would not estop them. *O'Mulcahy* v. *Holley,* 28 Minn. 31; *Hawkins* v. *Methodist Episcopal Church,* 23 Minn. 256.

The plaintiffs' title including the will was of record during all the time and was as open to Pratt and McDonald as to the plaintiffs. *Mills* v. *Graves,* 38 Ill. 455; *Minneapolis Trust Co.* v. *Eastman,* 47 Minn. 301; *Shillock* v. *Gilbert,* 23 Minn. 393.

The question would be one of waiver or ratification rather than estoppel. It is essential for a ratification: 1st. That the act which the ratification or waiver is claimed to validate, be done by one acting professedly for or on behalf of the person sought to be bound. *Mitchell* v. *Minnesota Fire Ass'n,* 48 Minn. 78. 2nd. That the person sought to be bound by the waiver or ratification must at the time of the alleged waiver or ratification have full knowledge of the material facts of the transaction, its imperfections and his own right to impeach it. *Allen* v. *American B. & L. Ass'n,* 49 Minn. 544; *Harmon* v. *Smith,* 38 Fed. Rep. 482. 3rd. The person sought to be charged by waiver or ratification must have acted deliberately and with the intention of relinquishing his right or ratifying the voidable transaction. Silence alone is not effectual.

*Henry & C. Co.* v. *Bond,* 37 Neb. 207; *Van Dyke* v. *Seelye,* 49 Minn. 557; Pomeroy Eq. Jur. § 964.

There could be no waiver or affirmance of the executors' acts by the plaintiffs. Besides that would be an affirmative defense necessary to be pleaded. It is not pleaded. Plaintiffs had a right to have the evidence and findings confined to the issues. *Stuart* v. *Lowry,* 49 Minn. 91.

*Young, Fish & Dickinson,* for respondents.

These two lots were subject to be sold to pay decedent's debts. They were not exempt as a homestead or otherwise. 1878 G. S. ch. 47, § 29. All of testator's property, real and personal, including these lots failed to pay one third of his debts, yet with some $54,000 of indebtedness remaining unpaid plaintiffs claim to own this property under the will. The authority to sell and convey for any of the purposes evidenced by the will is clearly vested in the executors and no license was necessary. *Fallon* v. *Butler,* 21 Cal. 24; *Bond* v. *Zeigler,* 1 Ga. 324; *Rankin* v. *Rankin,* 36 Ill. 293; *Davis* v. *Hoorer,* 112 Ind. 423; *Lindley* v. *O'Reilly,* 50 N. J. Law, 636.

Whether the foregoing interpretation of the will be correct or not, it is the interpretation placed upon it by the Probate Court and is conclusive against this collateral attack. *Greenwood* v. *Murray,* 26 Minn. 259; *Farnham* v. *Thompson,* 34 Minn. 330.

These plaintiffs were parties to the proceedings in the Probate Court, for notice had been duly given and whatever was done within the jurisdiction of that court was binding upon them. *Wood* v. *Myrick,* 16 Minn. 494.

Plaintiffs are estopped by their conduct. Estoppels *in pais* equitable estoppels or estoppels by conduct are legal means for the prevention of fraud. Bispham, Eq. § 282; *Niven* v. *Belknap,* 2 Johns. 573; *Wendell* v. *Van Rensselaer,* 1 John. Ch. 344; *Higinbotham* v. *Burnet,* 5 John. Ch. 184.

Within thirty days after the executors were discharged this action was begun. The plaintiffs waited until the administration was closed and the lots no longer subject to be sold. Having in view the decision in *State ex rel.* v. *Probate Court,* 40 Minn. 296,

they were ready to commence suit as soon as the creditors' lien was discharged. This circumstance indicates that they did not stand by in ignorance of the alleged defect in the sale, but if they did, it would be immaterial. *Storrs* v. *Barker*, 6 John. Ch. 166; *Favill* v. *Roberts*, 50 N. Y. 222.

Matter constituting an estoppel *in pais* need not be pleaded as such, to enable a party to take advantage of an estoppel on the trial. *Caldwell* v. *Auger*, 4 Minn. 217; *Coleman* v. *Pearce*, 26 Minn. 123; *Kipp* v. *Bullard*, 30 Minn. 84.

COLLINS, J. For many years prior to his death, which occurred in 1886, and at that time, James A. Lovejoy owned and occupied, as his residence property, lots 6, 7, 8, and 9 in block 28, town site of St. Anthony Falls. The dwelling house was on lot 8, while a barn was partly on that lot and partly on lot 9. Lots 6 and 7 were used in connection with 8 and 9, but were no part of the statutory homestead. In 1885, Lovejoy made his last will and testatment. Evidently, his estate was much more valuable when the will was made than at the time of his decease, or he labored under a delusion as to his financial condition, for it turned out that he died insolvent. The will was duly probated, and the three executors named therein were duly appointed, qualified, and entered upon the duties of their trust.

The will was quite formal, and contained provisions which, to carry out, would have required a large estate. As preliminary, the executors were directed to pay the testator's just debts and funeral expenses as soon as practicable. He gave and devised to his wife the house and all the grounds therewith connected which were then used and occupied as a homestead (the location being given), to be held, used, and owned by her during the term of her natural life, and at her decease to descend and belong to his children, in fee, share and share alike, save as to certain restrictions, of no moment here. We need not further refer to the details of the will, except to say that by express provision the executors were given full and complete power and right to make and deliver any and all deeds and other instruments, and to do any and all acts and things, necessary for the purpose of carrying out the full intention of the same, and all and every part thereof.

In due form of law, the executors proceeded to make out and file an inventory and appraisal of the estate, in which lots 6 and 7 were treated, inventoried, and appraised as separate and distinct from 8 and 9, the statutory homestead.   Later, in the due course of probate proceedings, each of these plaintiffs, except the son Arthur, filed claims of indebtedness against the estate, which claims were duly allowed.   The son Lorin K. was indebted to the estate in a much larger amount than was allowed to him, however.

In May, 1887, acting undoubtedly under the clause in the will before mentioned, the executors bargained and sold all the right, title, and interest Lovejoy had or claimed to have at his decease in lots 6 and 7, for $11,000, to one Pratt, and, assuming to act under the will and its probating, in due form, conveyed the property to him by deed of May 11, 1887, which was at once filed and recorded in the office of the proper register of deeds.   The defendant John McDonald derives his title to the property in dispute through a deed from said Pratt, of date August 31, 1891, also promptly recorded.   Before that,—March 27, 1891,—Pratt had sold and conveyed to defendant Maggie McDonald, wife of defendant John, a part of these lots, the deed being placed on record April 9, 1891.   Immediately upon such sale and conveyance, the purchaser and her husband commenced the erection of a dwelling house on the land purchased, and, on its completion, moved into it, and have ever since resided there.

July 31, 1890, the executors filed in the Probate Court their final account as executors and trustees of and under the will, with their petition for the allowance of said account, and for a settlement and distribution of the residue of the estate remaining in their hands; and said account showed, among other items of money received by them, the sum of $11,000 from the sale of lots 6 and 7.   It also showed the disbursement of all of the money received by said executors,—about $38,000,—except $3,455.37, in part payment of the debts of the decedent, including the claims of part of these plaintiffs.   Due notice of the time and place of hearing said account and partition was given, and, at the hearing, plaintiffs Hannah A. and Lorin K. Lovejoy and Mrs. Winston appeared in court by counsel, and took part in the proceedings.   No objection was made to that part of the final account by which it clearly appeared that lots 6 and 7 had been sold by the executors under a power as-

sumed by them to exist in the will. On December 20, 1892, a complete settlement of the estate was made, and the executors discharged, the assets having paid but one-third of the liabilities. From the time of the probate of the will to the final settlement of the estate, all of these plaintiffs, the widow and children of the decedent, resided in the city wherein the property in question was situated, and in the county in which the probate proceedings were had. They also knew of the insolvent condition of the estate long before Pratt purchased the lots, had knowledge of such purchase, and also of the purchases by these defendants, who, as well as Pratt, bought in entire good faith, and also knew of the erection and occupancy of the dwelling house. After the estate had been fully administered upon in the Probate Court, this action was commenced, and until then neither of the plaintiffs had claimed that the sale to Pratt was irregular or unwarranted.

We are of the opinion that, for the purpose of paying the debts of the decedent,—claims duly presented and allowed against the estate,—the executors were empowered to sell and convey the real property in question. It was no part of the homestead exempted by law, and consequently beyond the reach of creditors; and it was manifestly the intention of the testator that his just debts should first be paid, for he had expressly so directed at the beginning of his will. And the clause by which he conferred upon his executors full and complete power to execute and deliver deeds and other instruments, and to do all and any acts necessary for the purpose of carrying out his intention as indicated, was as much directed towards taking steps essential to the liquidation of his indebtedness as it was to the performance of any other prescribed act. Taking the will as a whole, we are of the opinion that the sale and conveyance of the property in question for the purpose for which it was sold and conveyed by the executors was regular and valid. It was not necessary for a sale to be made by order of the Probate Court, as contended by the appellants.

But an affirmance of the judgment need not be placed wholly on that ground. At no time during the pendency of the probate proceedings did the plaintiffs have any beneficial interest in the property. It was subject to sale for the payment of debts, and although the proceeds of a sale found their way into the cash assets, and

thus for distribution among the creditors, through the act of the executors, this might have been accomplished by an order of the court, had the power of sale not been vested in such executors by the terms of the will. And the plaintiffs' attempt to now establish a right and interest is wholly based upon a technicality. They have delayed action of every nature until the estate has been settled, and then, through these technicalities, seek to be benefited at the expense of these defendants or Pratt, who, in perfect good faith, purchased the property, the defendants improving a part of it. The plaintiffs had no substantial rights, and claimed none, while the estate was in Probate Court. Such rights as they had,— to see that the property subject to the payment of the decedent's debts was properly applied to that purpose,—they could easily forego and waive by acquiescing in its disposition, although such disposition might have been somewhat irregular. All were advised by the proceedings as to how these lots had been converted into cash, and several had actual knowledge of the course pursued, and, with other creditors, participated in the money derived by the conversion. We do not think they should now be allowed to repudiate the transaction. On the facts, which have been fully detailed, we are of the opinion that plaintiffs are estopped from asserting any right or title in or to the premises.

Judgment affirmed.

GILFILLAN, C. J., absent on account of sickness, took no part.

CANTY, J. (concurring). I agree with the result arrived at in the foregoing case, but am of the opinion that the power of sale in the will does not apply to the property here in dispute, or authorize the executors to sell that property. But I am of the opinion that these plaintiffs should be held estopped from claiming the property. The estate was insolvent, and they had no beneficial interest in the property. It seems to me that it is time the principles of equitable estoppel were applied to such a case as this. Equity says: This property was purchased in good faith, and you made no objection. It was not your property, and you cannot, by your laches and acquiescence, make it such.

(Opinion published 61 N. W. 320.)