*557 GILBERTSON, Chief Justice
(on reassignment).
[¶ 1.] Wayne Olson, in his capacity as the personal representative of Glenn Olson’s estate, sold real property that had been specifically devised to James Olson and other devisees as tenants in common. Personal property passing under the residuary clause was also sold at public auction. The trial court confirmed the sales but sanctioned the personal representative $1,000 for failing to give James advance notice of the public auctions. We reverse and remand in part and affirm in part.
FACTS AND PROCEDURAL HISTORY
[¶ 2.] Glenn Olson died testate on August 3, 2002. At the time of his death, he owned approximately 132 acres of farmland, including a homestead. This realty and home, which was built in 1900, had been in the Olson family for generations. Although apparently a modest homestead by current standards, Glenn had spent his entire life living in it while farming the adjoining land. His sister also lived in the homestead and took care of housekeeping chores. Wanting to keep this farm in the family he wrote a will where he specifically devised this real estate to James and six other nieces and nephews (collectively heirs). Glenn’s personal property was devised to the same heirs through the residuary clause.
[¶ 3.] Probate of Glenn’s will is subject to South Dakota’s Uniform Probate Code (UPC) as it was drafted subsequent to South Dakota’s implementation of the UPC in 1995. Therefore, his estate was informally probated in accordance with the UPC.[1] Wayne was appointed personal representative in September 2002. Following his appointment, Wayne determined that the buildings on the homestead were in such poor condition that they constituted a drain on the estate. Consequently, without the notice to the heirs as required by SDCL 29A-3-715(b), he sold the specifically devised real property at a public auction. The personal property was sold separately, also without the same requisite notice to the heirs. The trial court found as a finding of fact, “[t]he only notice of the sale given by the personal representative was 1 or 2 years earlier when he wrote the other heirs indicating that he was considering whether it should be sold.” It entered a conclusion of law that ‘Wayne Olson’s notices were inadequate.” At oral argument Wayne conceded that the sales did not comply with SDCL 29A-3-715(b).
[¶ 4.] James had filed a demand for notice pertaining to the estate under SDCL 29A-3-204, which requires that any “order or filing” pertaining to the estate not be “made or accepted” without providing notice to James. According to Wayne, he conducted the public auction of the real and personal property under SDCL 29A-3-711, which provides that personal representatives may exercise their powers “without notice, hearing, or order of court.”
[¶ 5.] James ultimately did receive legal notice of the completed sales through the filing of the summary of these public sales. He also received notice of the motion to confirm the sales. James appeared and objected to the confirmation of both sales. Following a hearing on the motion, the trial court confirmed the sales, finding that the land was a drain on the estate, the sales were conducted in a reasonable manner, and the land brought an exceptional price exceeding market value. Ultimately, the trial court concluded that “[t]he evidence is abundant that the sale [of real *558 property] was conducted for a good reason.”
[¶ 6.] James did not object to the court’s finding that there was good reason to sell the property. Instead, James argued that Wayne did not have the power to sell specifically devised property. James also claimed that he was entitled to advance notice of the public auctions under SDCL 29A-3-204 and SDCL 29A-3-715(b). The trial court ultimately concluded that Wayne possessed a power of sale under the UPC. Although the court also found that Wayne did not give advance notice of the public auctions as required by SDCL 29A-3-715(b), it concluded that James had not been damaged by the lack of notice. Therefore, the sales were not voided on this basis. Instead, the court sanctioned Wayne $1,000 for failing to give advance notice.
[¶ 7.] We have restated the parties’ issues[2] on appeal as follows:
1. Whether the personal representative possessed the power to sell specifically devised land when the power of sale was not contained in the will and the sale was not necessary to pay estate debts.
2. Whether the sale of personal property was void under SDCL 29A-3-204 and SDCL 29A-3-715(b) for failure to give advance notice of the public auction, and if not void, was the remedy of damages proven.
By notice of review, Wayne raises the following issue:
3.Whether the trial court erred in assessing a sanction against the personal representative for failure to give advance notice of the sales.
STANDARD OF REVIEW
[¶ 8.] This Court’s standard of review is well settled:
This Court reviews a trial court’s findings of fact under the ‘clearly erroneous’ standard and overturns a trial court’s conclusions of law only when the trial court erred as a matter of law. Century 21 Associated Realty v. Hoffman, 503 N.W.2d 861, 864 (S.D.1993) (citations omitted).... Questions of law are reviewed de novo. City of Colton v. Schwebach, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771. “This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court.” In re Estate of Jetter, 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28.
Matter of Estate of O’Keefe, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139.
*559 ANALYSIS AND DECISION
[¶ 9.] 1. Whether the personal representative possessed the power to sell specifically devised land when the power of sale was not contained in the will and the sale was not necessary to pay estate debts.
[¶ 10.] James first argues that Wayne was without power to sell specifically devised land because there was no power of sale provision in the will and the sale of specifically devised property was inconsistent with the specific devisees’ right to receive property in kind. We agree.
[¶ 11.] In 1877, our first Territorial Probate Code was passed which contained a relevant statute which was to remain in effect until the enactment of the Uniform Probate Code over a century later.
When property is directed by the will to be sold, or authority is given in the will to sell property, the executor may sell any property of the estate without the order of the probate court, and at either public or private sale, and with or without notice, as the executor may determine!.]
Section 194 Probate Code, Revised Codes 1877, re-codified as SDCL 30-22-1, repealed by 1995 S.D. Laws ch. 167, § 168. In the case of In re Estate of Kappenmann, 82 S.D. 91, 141 N.W.2d 780 (1966), this Court upheld a sale of real estate by an executor solely because such authority had been granted in the decedent’s will thus invoking the authority of the above-cited statute. In so doing, the Court noted that the sole other grant of authority for the sale of a decedent’s real property during probate was limited to situations where:
it appears to be necessary or that it would be for the advantage, benefit and best interests of the estate and those interested therein or for the purpose of paying a debt secured by a mortgage or lien on such property!.]
Id. at 782 (emphasis added) (quoting SDL 1960 Supp. 35.1501, re-codified as SDCL 30-22-6, repealed by 1995 S.D. Laws ch. 167, § 168). A review of the two statutes cited in Kappenmann establishes that pri- or to the enactment of the UPC, a sale of real estate by an executor could be legally accomplished by: (1) a grant contained in the will; or (2) for settlement of claims and debts; or (3) where it is in the best interests of the estate and the heirs. It appears that this was the general rule in many other jurisdictions. Hanson v. Hanson, 149 Iowa 82, 127 N.W. 1032, 1033 (Iowa 1910), 31 Am.Jur.2d Executors and Administrators § 731, 34 C.J.S. Executors and Administrators § 295.
[¶ 12.] As is uncontested herein, there is no such power of sale granted to Wayne by the decedent’s will to validate the sale. Thus, the issue now before us calls upon us to engage in statutory interpretation to determine if the passage of the Uniform Probate Code by the South Dakota Legislature in 1995 made a change so significant in a century old doctrine as to essentially reverse it.
[¶ 13.] Some historical background of the UPC particular to South Dakota is of analytical assistance to guide us in the issue now before us: “[a]s an overall view, we would note that the UPC does not appear to be a revolutionary departure from past probate procedure.” Matter of Estate of Jetter, 1997 SD 125, ¶ 16, 570 N.W.2d 26, 29. Therein, we cited to SDCL 29A-1-103 which provides that: “[u]nless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions.” (Emphasis added).
Although no legislative history exists concerning the adoption of the UPC, the *560 State Bar of South Dakota published educational materials in June of 1994 on the enactment of the UPC in this jurisdiction. Co-chairman of the Probate Form Committee of the State Bar, Professor David English, wrote that this Committee created the UPC work product which was adopted by the Legislature. Committee member Richard Kolker wrote that “South Dakota’s adoption of a new probate code will not change the basic principles under which property is transferred from the decedent to the decedent’s heirs.” While this opinion is not binding on us any more than other commentary concerning the UPC, it is persuasive authority that contradicts the position argued by [the Estate.]
Jetter, 1997 SD 125, ¶ 16, 570 N.W.2d at 29-30 n. 5.
[¶ 14.] According to legislative rules of construction applicable exclusively to wills, “[a] specific devisee has a right to the specifically devised property in the testator’s estate at death.” SDCL 29A-2-606(a).[3] Also, “[u]nless a contrary intention is indicated by the will, the distributable assets of a decedent’s estate shall be distributed in kind to the extent possible through application of the following provisions: (1) A specific devisee is entitled to distribution of the thing devised.” SDCL 29A-3-906(a)(l) (emphasis added). “This section establishes a preference for distribution in kind [as][i]t directs a personal representative to make distribution in kind whenever feasible.” Unif. PRObate Code § 3-906 cmt. (amended 1987).
[¶ 15.] Furthermore, “[u]pon the death of a person, that person’s real and personal property devolves to the persons to whom it is devised by will.” SDCL 29A-3-101. This statute makes it clear that Glenn’s real property vested in James and the other six nieces and nephews at the time of Glenn’s death, subject only to the probate of the estate. See In re Estate of Roehr, 2001 SD 85, ¶ 6, 631 N.W.2d 600, 602.
[¶ 16.] Unlike pre-UPC law requiring that a power of sale be in the will, personal representatives now possess a statutory power of sale unless a contrary provision is contained in the will. SDCL 29A-3-715(a) provides in relevant part:
Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in § 29A-3-902,[4] a personal representative, acting reasonably for the benefit of the estate, may properly: ...
(6) Acquire or dispose of an asset, including land ...
(23) Sell, mortgage, or lease any real or personal property of the estate or any interest therein....
(Emphasis added).
[¶ 17.] Although SDCL 29A-3-715(a)(23) allows the personal representa *561 tive to sell any real or personal property of the estate as long as he or she is acting reasonably for the benefit of the estate, there is an important exception to this statutory power of sale. This power in a fact setting such as this cannot be exercised if it is restricted or otherwise provided for by the will as the other statutory authorizations for sale are not applicable. Id. Here, the will restricts the power of sale through a specific devise of real property. The act of specifically devising the real property exhibits the testator’s clear intent that the land not be sold. This is also reinforced by the fact that there was no power of sale provision in the will. Were we to hold to the contrary, in fact situations such as this, it would essentially nullify the provisions of SDCL 29A-2-606(a) and 29A-3-906(a)(l).
[¶ 18.] A Pennsylvania court interpreting a similar statutory power of sale conferred upon a personal representative concluded that “no such power of sale exists as to real property specifically devised.” Brown v. Bailey, 2 Fiduc.Rep. 342, 84 Pa. D. & C. 269, 274, 1953 WL 4538, at *3 (1953). The statute in Brown provided that the “power of sale has no application where it is ‘otherwise provided by the will.’ ” Id. (citation omitted). Furthermore, other courts have held that “a general power authorizing the sale or rental of any property which the testator possessed at the time of death applies only to property not specifically devised.” In re Estate of Radjenovich, 1991 WL 70304, at *1 (Minn.Ct.App.1991) (unpublished) (emphasis added) (citing 1 R.Stein, Stein on PRObate, § 10.01b(3) (2d ed 1990)); 1 R.Stein, Stein on PRObate, § 10.01b(3) (2d ed. 1990) (“Minnesota Statutes section 524.3— 715 states, in effect, that the personal representative has power to sell ‘except as restricted or otherwise provided by the will.’ A specific devise should be considered such a restriction”). See also In re De Forest’s Estate, 147 Mise. 82, 88, 263 N.Y.S. 135, 142 (N.Y.Sur.1933) (property specifically devised is not subject to general power of sale granted to executors); Wilkinson v. Chambers, 181 Pa. 437, 442, 37 A. 569, 569 (1897); In re Estate of Gamble, 183 So.2d 849, 852 (Fla.Dist.Ct.App.1966); In re Chaney’s Estate, 120 Tex. 185, 189, 36 S.W.2d 709, 711 (1931).
[¶ 19.] In Radjenovich, the Minnesota Court of Appeals held the trial court properly found that the general powers given to the personal representative related only to property not specifically devised. Radjenovich, 1991 WL 70304, at *1 (citing In re Scott’s Will, 88 Minn. 386, 388, 93 N.W. 109, 110 (Minn.1903)). Thus, the personal representative was not entitled to sell lake-shore property specifically devised to the testator’s sons. Id. Likewise, in addressing a similar situation, the Pennsylvania Supreme Court reasoned:
The authority given to the executor in item 3 cannot be construed as extending to and including lands specifically devised in items 2 and 5. A construction of it which would enable the executor to defeat specific devises of real estate cannot be sanctioned. The reasonable and proper construction of it is that which limits it to property not specifically devised by the will. This construction obviously accords with the intention of the testator in conferring the power to sell or lease.
Wilkinson, 181 Pa. at 442, 37 A. at 569.
[¶ 20.] Wayne claims the will did not restrict or conflict with the statutory power of sale. However, the will provided for the specific devise of the real property and did not otherwise provide for a power of sale. This inherently conflicts with the statutory power of sale, for it is an indication of the testator’s intent that the real property not be sold. Instead, Glenn 01- *562 son intended to give his land to the specific devisees.
[¶ 21.] The authority Wayne relies upon for approving the sale of this specifically devised property is also readily distinguishable. Most of the cases are pre-UPC and the wills in those cases expressly granted the personal representative a power of sale. For instance, in In re Kap-penmann’s Estate, the will provided: “I authorize and empower my personal representative ... if and whenever in the settlement of my estate he shall deem it advisable, to sell ... the whole or any part of my real and personal estate.” 82 S.D. at 93-94, 141 N.W.2d at 781. Thus, there was no restriction on the power to sell; instead, there was an express grant of a power to sell. The Kappenmann Court even specified that there was no bar to the sale of specifically devised real property when it was made under a power of sale contained in the will, because the express authority was contained in the testator’s will. 82 S.D. at 97, 141 N.W.2d at 783 (citing Champlin v. Powers, 33 A.L.R.2d 1176, 80 R.I. 30, 90 A.2d 787).[5]
[¶ 22.] Thus, in the cases relied upon, including Kappenmann, the will established the power of sale, not a statute. Although the trial court concluded there was no difference between a power of sale granted by the will and a power of sale granted by statute, it is relevant to the testator’s intent. And, “the intention of the testator, as taken from the will as a whole, controls the exercise of powers granted to the personal representative.” Radjenovich, 1991 WL 70304, at *1 (citing Lovejoy v. McDonald, 59 Minn. 393, 401, 61 N.W. 320, 321 (Minn.1894)).
[¶ 23.] Other courts have also recognized the distinction between a testator granting the power of sale as opposed to a statute: “Absent a grant of a power of sale by the testator, or specific instructions by the testator that the devise be sold before distributed, specific devises must be distributed in kind.” In re Estate of Polly, 511 So.2d 755, 756 (Fla.Dist.Ct.App.1987) (citing generally In re Estate of Smith, 200 So.2d 547 (Fla.Dist.Ct.App.1967)); Gamble, 183 So.2d 849 (additional citation omitted) (emphasis added). In Polly, “[t]he will contained a general power of sale only as to the residual estate — not to the specific devises.” 511 So.2d at 756. Thus, the Polly court ordered the specific devises be distributed in kind instead of sold. Id.
[¶ 24.] Another court acknowledged that if the specific devisees “had elected to take the land as land, free from the power of sale, prior to the ... sale by the executor under the power, ... an action would lie in behalf of the parties interested, to enjoin the executor from selling under the power.” Mellen, 34 N.E. at 928. The Mellen court recognized that “[a] sale under such circumstances would at least create a cloud on the title, and an action to enjoin the sale would be an available and *563 proper remedy.” Id. (citing Butler v. Johnson, 111 N.Y. 204,18 N.E. 643 (N.Y.1888)).
[¶ 25.] Wayne would require testators to draft their wills to limit, restrict, or eliminate the general power of sale provided by statute in order to more clearly express their testamentary intent. He submits that had Glenn wished to exempt the specific devise from Wayne’s statutory power of sale, Glenn must have done so in his will. We conclude that Glenn has done just that. By providing for the specific devise of the property, he stated his testamentary intent to restrict its sale.
[¶ 26.] Although Wayne claims that he possessed an unrestricted general power of sale, this is not the case. Wayne possessed a statutory power of sale that was subject to restrictions in the will. The will provided for the specific devise of the real property, which inherently prohibits a sale or at least indicates the intent to restrict its sale. In such a case, we should uphold the testator’s intent. If we were to adopt Wayne’s position, a personal representative could sell a family heirloom that was specifically devised to a family member as long as he or she was “acting reasonably for the benefit of the estate.” A probate administration is not an eminent domain proceeding where an heir’s bequest is involuntarily taken from him or her and they receive “just compensation” in return. Being presented by the personal representative with a bank draft may be a sorry alternative to the promise in a will that land which had been in the family for generations would vest in the decedent’s heirs.
[¶ 27.] The facts of this case strikingly point out what the statutes protect. The homestead at issue was built in 1900 and initially owned by Stephord and Belva Olson, Glenn’s parents, prior to Glenn becoming the fee owner. Although Glenn’s homestead was humble by current standards or “dilapidated” as described by the Estate’s appraiser, it was the only place where Glenn ever lived. He lived his entire life there and farmed the adjoining land. It was his life. It also provided a home for his sister. His nieces and nephews, who he designated in his will as his heirs, visited him there. While the appraiser indicated such homesteads could be bought and sold without difficulty, that fact ignores the family’s historical and sentimental attachment to this land which transcends monetary valuation. It was not just Glenn’s investment to be sold when the opportunity for profit presented itself, it was his home. A review of the above statutes makes it clear that the Legislature has intended that protections should be, and are in place in South Dakota to protect a testator’s intent.
[¶ 28.] The sale should have been voided as the personal representative did not have authority to sell the specifically devised property unless it was necessary to satisfy the debts of the estate or for other valid purposes authorized by the UPC such as where the heirs agree it is for their best interests as well as that of the estate. Wayne identifies no basis which is so meritorious as to override the contents of Glenn’s will. Thus, today we honor Glenn’s intent as set forth in his will.
[The decedent] wanted certain land to go to certain people. No two pieces of land are alike. Individual parcels of real property are considered to be so unique that when an action is brought for breach of a contract for sale of land, specific performance may be ordered.
In re Estate of Siebrasse, 2002 SD 118, ¶ 9, 652 N.W.2d 384, 386.
[¶ 29.] In analyzing the purpose of the UPC we concluded that “[p]eople do not go to a lawyer to have a will drawn with the idea that their estate will pass under the intestate succession laws. That is the *564 whole purpose of a will, to avoid the State’s estate plan by creating your own.” Jetter, 1997 SD 125, ¶28, 570 N.W.2d at 32. We reverse the trial court order confirming the sale of specifically devised real estate and remand for further proceedings consistent with this opinion. Upon remand, this will allow the third party purchaser the opportunity to intervene to protect his or her interests.
[¶ 30.] 2. Whether the sale of personal property was void under SDCL 29A-3-204 and SDCL 29A-3-715(b) for failure to give advance notice of the public auction, and if not void, was the remedy of damages proven.[6]
[¶ 31.] James argues that Wayne’s failure to give advance notice of the public auction voided the personal property sale under SDCL 29A-3-204 and SDCL 29A-3-715(b). We conclude the sale was not void under SDCL 29A-3-204 or SDCL 29A-3-715(b).
[¶ 32.] SDCL 29A-3-204 provides:
Any interested person desiring notice of any order or filing ‘pertaining to a decedent’s estate may file a demand for notice with the court at any time after the death of the decedent stating the name of the decedent, the nature of the de-mandant’s interest in the estate, and the demandant’s address or that of the de-mandant’s attorney. The demandant shall mail a copy of the demand to the personal representative if one has been appointed. After filing of a demand, no order or filing to which the demand relates shall be made or accepted without notice as prescribed in § 29A-1-401 to the demandant or the demandant’s attorney. The validity of an order which is issued or filing which is accepted without compliance with this requirement shall not be affected by the error, but the petitioner receiving the order or the person making the filing may be liable for any damage caused by the absence of notice. The requirement of notice arising from a demand under this provision may be waived in writing by the demandant and shall cease upon the termination of the demandant’s interest in the estate.
(Emphasis added). Because James filed a demand for notice under this statute, he was entitled to advance notice in compliance with SDCL 29A-3-715(b) of the personal property sale. The language “any order or filing pertaining to a decedent’s estate” impliedly includes any notice of sale. SDCL 29A-3-204. Thus, a proposed sale of devised personal property warrants this required notice.
[¶ 33.] In addition, SDCL 29A-3 — 715(b) also required advance notice of the public auction of personal property. SDCL 29A-3-715(b) provides in relevant part:
Not less than fourteen days prior to the closing of any sale of real or personal property of the estate for which the fair market value is not readily ascertainable, the personal representative shall provide written information of the intent to sell to the persons who have filed a demand for notice under § 29A-3-204.
The parties do not dispute that the fair market value of the personal property was not readily ascertainable. Moreover, the “closing” of the sale of personal property would take place at the time of the public auction after the purchaser bids and sub *565 mits payment for the property. Therefore, James was entitled to written notice not less than fourteen days prior to the personal property public auction. This comports with the concept that those devi-sees who are potentially entitled to the personal property, even under a residuary clause, should receive notice of a sale of property devised to them. This required notice would allow the devisee to either obtain the property prior to the sale or bid on the property at the sale.
[¶ 34.] However, the failure to give notice does not, under the express language of the statutes, void the sale. SDCL 29A-3-204 specifically provides that failing to give notice does not vitiate the confirmation of sale. Rather, the remedy for failure to give notice was limited to damages.
The validity of an order which is issued or filing which is accepted without compliance with this [notice] requirement shall not be affected by the error, but the petitioner receiving the order or the person making the filing may be liable for any damage caused by the absence of notice.
Id. Thus, “[i]f the exercise of power concerning the estate is improper, the personal representative is hable to interested persons for damage or loss resulting from breach of fiduciary duty.” SDCL 29A-3-712. See also Green v. Gustafson, 482 N.W.2d 842, 846 n. 3 (N.D.1992) (“If a personal representative improperly disposes of property of the estate, the remedy of the devisee or heir is directly against the personal representative”). James recognized as much at oral argument where he sought return of the realty yet conceded it was not possible to recover the “rakes, wash-tubs, hoe-handles” and other items which were dispersed by the sale of Glenn’s personal property. He conceded in regards to the personal property, his remedy was a suit for damages against the personal representative. This is the same result as if the personal property had been destroyed by fire through the negligence of the personal representative by failing to protect it. Obviously it is gone and the only remedy is damages. However, as to the real property and buildings, they are still in existence and at the same location. James’ remedy was an award of damages against “the petitioner receiving the order or the person making the filing.” SDCL 29A-3-204.
[¶ 35.] Despite the theoretical problems decried by the dissent, in actual application of the UPC statutes, no problems should be encountered, let alone create an “impossible situation for practioners” if the statutes are properly followed. As noted above, for an heir to have standing to challenge the proposed' sale, he or she must serve a demand notice upon the personal representative per SDCL 29A-3-715(b). In such instances as here, where an heir files such a notice, 29A-3-715(b) requires notice be given to the heirs prior to any sale. If there are no objections filed by the heirs with standing to object or anyone else with such standing, the sale continues no differently than it would have under our previous probate code. Should an heir enter a timely objection, the trial court will determine it and if it is without merit the sale then proceeds. If the objection by the heir has merit, the sale will not proceed and presumably the property will be distributed to the heirs in accordance with the testator’s wishes as expressed in the will.
[¶ 36.] Here, James argues that he was damaged because he was not given advance notice of the sale and was therefore unable to “protect” his property. However, he asserts no monetary claim, and the trial court concluded that “James Olson did not suffer any losses due to Mr. Wayne *566 Olson’s failure to comply with [SDCL] 29A-3-715(b).” Because there is no clear error in the court’s finding that James failed to prove damages, we affirm the confirmation of the sale of personal property.
[¶ 37.] 3. Whether the trial court erred in assessing a sanction against the personal representative for failure to give advance notice of the sales.
[¶ 38.] By notice of review, Wayne challenges the trial court’s imposition of a sanction for failure to give notice of the public auctions. The court, in its bench decision, recognized that a penalty or sanction was not authorized:
[29A-3-715(b) ] doesn’t provide a penalty for violation; and that troubles the court, that there should be a penalty for violating that statute. And the statute doesn’t prescribe a penalty, but otherwise, if there’s no penalty for violating that, you know, the court’s efforts to get people to comply with the statutes are empty. Consequently, the court feels that it needs to craft some kind of a penalty for the failure to comply with that section, and the court’s determination is that it would be appropriate at this — in this instance to sanction Mr. Wayne Olson ... $1,000.
We agree that 29A-3-715(b) does not authorize a sanction or penalty for a notice violation. Because the plain language of the statute does not authorize a penalty or sanction, we may not add that language to the statute.
While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.
Petition of Famous Brands, Inc., 347 N.W.2d 882, 885 (S.D.1984) (citations omitted). Therefore, the trial court erred in awarding sanctions because they were not authorized under the statute. We therefore reverse the award of sanctions.
[¶ 39.] Wayne, as the personal representative, has moved for attorney’s fees in the amount of $5,080.05 under SDCL 15-26A-87.3 and SDCL 29A-3-720. We deny the motion.
[¶ 40.] Reversed and remanded in part and affirmed in part.
[¶ 41.] SABERS and MEIERHENRY, Justices, concur.
[¶ 42.] KONENKAMP and ZINTER, Justices, dissent.

. James did not exercise his right to require that the estate be formally administered.

. James also raised a "partition” issue using the following language: "Was the personal representative entitled to partition real estate which is the subject of a specific bequest in the decedent's will without complying with SDCL 29A-3-911 [referring to notice].” , SDCL 29A-3r911 does not contain procedural notice requirements other than noting that a partition may be allowed “[a]fter notice to the interested heirs or devisees.” Id. Furthermore, SDCL 29A-3-911 only applies when "the personal representative or one or more of the heirs or devisees [petitions] the court ‘ prior to the formal or informal closing of the estate, to make partition.” Id. Here, there was no petition to partition under SDCL 29A-3-911. This was a sale dispute only involving a motion to confirm the sale of land under SDCL 29A-3-704. As the trial court explicitly found, Wayne "invoked the power of the court under SDCL 29A-3-704 to request court approval of the sales.” Because this was not a civil partition action under SDCL 29A-3-911 or SDCL ch. 21-45 (governing the general civil remedy of partition), but was a confirmation of sale proceeding under SDCL 29A-3-704, we decline to address James’ notice issue under SDCL 29A-3-911 or SDCL ch. 21-45. We only address the notice issue under the other statutes that were considered below.

. The dissent’s analysis that "SDCL 29A-2-606 does not apply because that statute deals with the issue of ademption” is simply incorrect. This claim is flatly contradicted by the opening provision of that chapter, SDCL 29A-2-601 which declares, "[i]n the absence of a finding of a contrary intention, the rules of construction in this part control the construction of a will.” Moreover, the title of chapter 29A-2 is "Rules of Construction Applicable Only to Wills.” This also fails to consider the unrestricted language of SDCL 29A-1-102 which declares that ”[t]his code shall be liberally construed and applied to promote simplification, clarification, and efficiency in the law of decedent’s estates.”

. SDCL 29A-3-902 provides for the order of abatement and clarifies that specifically devised property is to abate last. Subjection of the statutory power of sale to this priority statute also enforces the preference against the sale of specifically devised property.

. In the pre-UPC case, Hutkoff v. Winmar Realty Co., Inc., 211 A.D. 726, 730, 208 N.Y.S. 25 (1925), there was a “general and unrestricted" power of sale contained in the will. The same is true of the will in Weinstein v. Hunter, where a New York court held: "Looking at the will as a whole, the intention of the testator can hardly be mistaken. That intention ... was to give to his children all of his real estate, subject however to the power of sale in his executors. The right of the testator to so provide in his will is not questioned.” 276 A.D. 471, 476, 96 N.Y.S.2d 1 (N.Y.App.Div.1950) (emphasis added). A power of sale was also granted by the will in Davis v. Scavone, 149 Me. 189, 191-92, 100 A.2d 425, 426 (Me.1953); Stofer v. Stiltz, 179 Ky. 399, 200 S.W. 631, 632 (Ky 1918); Mellen v. Mellen, 139 N.Y. 210, 34 N.E. 925, 928 (1893); and Basler v. Delassus, 690 S.W.2d 791, 796 (Mo.1985).

. James also asserts that the sale of real property was void for failure to give advance notice. However, since we have already held that the sale of real property was void because the personal representative lacked the power to sell the specifically devised real estate, we need only address whether the sale of personal property was void for lack of advance notice.