#25472-a-PER CURIAM

**2010 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF DORIS BERYLE LAUE

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

KENNETH G. CAMPBELL
Rapid City, South Dakota                    Special Administrator
                                            and appellee.


DALE W. LAUE
Gilroy, California                          Pro Se Appellant.


* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 4, 2010

OPINION FILED **10/18/10**

#25472

PER CURIAM.

[¶1.]    Dale Laue (Dale) appeals from the circuit court's order for complete settlement of the estate of Doris Laue (Doris). We affirm.

**Facts and Procedural History**

[¶2.]    Doris, a widow and resident of Custer County, South Dakota, died testate on February 8, 2004. She had three sons: Dale, Bryan, and Wayne. Wayne predeceased Doris in 2000, leaving three children of his own living in California. Wayne had been divorced and, at the time of his death, his property was placed in a trust for the benefit of his three children. There were four co-trustees of the trust including Wayne's brother, Bryan.

[¶3.]    When Doris died, she left a will dated March 29, 1982. The will left all of her property to her husband, Richard or, if Richard predeceased her, to her three children, "equally, each to share and share alike." The will further provided that as to any of her children who predeceased her, that child's share of the estate should, "descend to and vest in the children of my deceased child . . . equally." The will named Richard executor and, if Richard predeceased Doris, Dale and Wayne, in turn, as successor executors.

[¶4.]    Dale was granted letters as personal representative of Doris's estate on March 8, 2004. In late 2006, counsel for Wayne's three children petitioned for Dale's removal as personal representative. A hearing was held and on December 22, the circuit court entered findings of fact, conclusions of law and an order removing Dale as personal representative, converting the case to formal probate, and appointing Kenneth Campbell (Campbell) special administrator of the estate.

- 1 -

[¶5.] Among grounds for Dale's removal, the circuit court found that Dale failed to fulfill a number of duties required of the personal representative, particularly with regard to Wayne's children. The court further found that Dale's "antagonistic attitude" toward Wayne's ex-wife, Jodi, and conflicts with Wayne's family would likely foster endless litigation not in the best interests of the estate or the heirs. Based upon these findings, the circuit court determined it in the best interests of the estate to remove Dale as personal representative and entered its order accordingly.

[¶6.] Following his appointment as special administrator, Campbell proceeded to collect the estate's assets, inventory the property, investigate potential claims, and formulate a strategy for distribution to the heirs. In this process, Campbell filed a series of petitions for authorization of certain actions including permission to abandon potential estate claims against Wayne's trust for a real estate loan and some cemetery lots. A hearing was held on the petitions and orders directing abandonment of the claims were entered. Dale petitioned to vacate these orders and his petitions were denied.

[¶7.] In July 2007, Campbell filed a petition for confirmation of the estate's sale of 153 acres of real property in Custer County. The petition indicated an auction sale for the real estate was scheduled for July 31, 2007. Dale moved to enjoin the auction but his motion was denied. After the auction, Campbell filed a supplemental petition for confirmation of the sale of the real estate indicating the property was sold for over two and one-half million dollars (precisely $2,668,400). The petition further indicated a closing date was scheduled for the sale on August

20, 2007. After a hearing, an order confirming the sale of the real estate was entered.

[¶8.] Over the ensuing months, Campbell resolved various additional issues pertaining to the estate, made several partial distributions of assets, and filed interim and final accountings. On September 3, 2009, Campbell filed a petition for complete settlement after formal probate proceedings, asserting there were no additional matters pending and the estate was ready for closing. Dale objected on several grounds including the estate's abandonment of the claims against Wayne's trust and the court's failure to compel responses to requests for admissions issued by Dale during the course of the litigation. The petition for complete settlement was heard on October 26, 2009. On November 31, the court entered its order for complete settlement overruling Dale's objections, distributing the remaining assets, discharging the special administrator (Campbell), and declaring settlement of the estate complete.

[¶9.] Dale appeals the circuit court's order for complete settlement of the estate, raising the following issues:

1. Whether the special administrator had power to sell the real property of the estate.

2. Whether the special administrator was required to offset certain indebtedness of Wayne's trust to the estate against the inheritance of Wayne's three children.

3. Whether the special administrator breached his duty to inquire into certain debts allegedly owed to the estate by Wayne's trust.

4. Whether the circuit court had jurisdiction to compel answers to Dale's request for admissions.

Additional facts will be set forth as they pertain to these issues.

## Standard of Review

[¶10.] This Court's standard of review in estate cases is set forth in *In re Estate of Olson*, 2008 S.D. 4, ¶ 8, 744 N.W.2d 555, 558:

> This Court reviews a trial court's findings of fact under the 'clearly erroneous' standard and overturns a trial court's conclusions of law only when the trial court erred as a matter of law. Questions of law are reviewed de novo. "This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court."

(quoting *Matter of Estate of O'Keefe,* 1998 S.D. 92, ¶ 7, 583 N.W.2d 138, 139 (citations omitted)).

## Analysis and Decision

[¶11.] **1. Whether the special administrator had power to sell the real property of the estate.**

[¶12.] In a succession of arguments, Dale challenges Campbell's power as special administrator to sell the real property of the estate.

### Special Administrator's General Power of Sale

[¶13.] Campbell was appointed special administrator under SDCL 29A-3-614 *et seq.* A special administrator has the powers of a general personal representative. SDCL 29A-3-617. "[A] personal representative has the same power over the title to property of the estate that an absolute owner would have" and "[t]his power may be exercised without notice, hearing, or order of court." SDCL 29A-3-711. "Except as restricted or otherwise provided by the will," a personal representative acting for the "benefit of the estate" may dispose of land and sell the real property of the estate. SDCL 29A-3-715(a)(6) & (23). Thus, Campbell had statutory power to sell the real property of the estate.

[¶14.] Dale argues Doris's will restricted the power to sell the real property of the estate to the named executors and, therefore, Campbell had no such power. As support for his argument, Dale relies on *Olson* in which this Court held that a specific devise of real property in a will restricts a personal representative's statutory power of sale. 2008 S.D. 4, 744 N.W.2d 555. This, however, is a different case than *Olson*. In *Olson*, this Court emphasized that the will provided for the specific devise of the real property and did not otherwise provide for a power of sale for the realty. *See Olson*, 2008 S.D. 4, ¶ 20, 744 N.W.2d at 561–62. Here, the will did *not* provide for the specific devise of the real property and *did* otherwise provide for a power of sale for the realty.

[¶15.] Doris's will actually contained *no* specific devises. It was a simple three page will that first directed payment of her funeral expenses and debts and then bequeathed "all" of her property, both real and personal, to her husband Richard. If Richard predeceased her, it bequeathed "all" of her property, both real and personal, to their three children. This stands in contrast to the specific devise of the real property to designated heirs in *Olson* and the separate devise of the personal property to the same heirs via a residuary clause. *See Olson*, 2008 S.D. 4, ¶ 2, 744 N.W.2d at 557. It can also be contrasted with the specific devises of real property described in *In re Estate of Siebrasse* where the will set forth separate parcels of property to be distributed to each heir. 2002 S.D. 118, ¶ 9, 652 N.W.2d 384, 386. There were no similar devises of the realty in this case.

[¶16.] Also unlike *Olson*, Doris's will *did* provide for a power of sale for her real property, stating in pertinent part: "I further order and direct that any named

executor herein, shall have full power and authority to sell any and all *real* and personal property without prior Court approval." (Emphasis added). Similar language is described as an unrestricted power of sale in *Olson*. 2008 S.D. 4, ¶ 21, 744 N.W.2d at 562. The Court cited authority in *Olson* noting that such clauses reflect an intention by a testator to give the heirs all of the real estate, but subject to the power of sale in the executors. *Id*. at n. 5 (citing *Weinstein v. Hunter*, 276 A.D. 471, 476, 96 N.Y.S.2d 1 (N.Y. App. Div. 1950)).

[¶17.] Based upon the absence of a specific devise of real property in Doris's will and the unrestricted power of sale over the real estate granted to her executors, there is nothing in the will restricting the statutory power of sale over the realty granted to Campbell by SDCL 29A-3-715(a)(6) & (23). Accordingly, Campbell had power to sell the realty under those provisions.

### Power of Sale of a Successor Administrator

[¶18.] SDCL 29A-3-716 provides in pertinent part that: "[A] successor personal representative has the same powers and duties as the original personal representative to complete the administration and distribution of the estate . . . but the successor shall not exercise any power expressly made personal to the personal representative named in the will." Citing this statute, Dale argues that the power of sale over the real property in her will was granted personally to the named executors and, therefore, could not be exercised by a successor personal representative such as Campbell.

[¶19.] The Supreme Court of Missouri considered whether a power of sale was personal to executors named in a will in *In re Estate of Basler v. Delassus*, 690

S.W.2d 791 (Mo. 1985). The court noted that the will named coexecutors and an alternate, that the clause conferring the power of sale did not mention any executor by name, and that the clause's clear intent was to permit its exercise by whatever executor or executors happened to be serving. *Id.* at 795. Accordingly, the court concluded the power of sale was not designed to be personal but ancillary to the administration of the estate and exercisable by a successor fiduciary. *Id.*

[¶20.] Factors similar to those in *Basler* are present here. The will named three potential executors. The separate paragraph of the will conferring the power of sale over both the real and personal property did not mention any of these three executors by name. The paragraph's intent was clearly to permit the exercise of the power of sale by whichever executor happened to be serving. Thus, the power of sale was not designed to be personal, but ancillary to the administration of the estate and, therefore, exercisable by a successor fiduciary such as Campbell.

## Power of Sale as Affected by Devolution of the Property

[¶21.] Dale also argues that, upon Doris's death, her real and personal property devolved directly to her heirs under SDCL 29A-3-101, providing in pertinent part: "Upon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will . . .." However Dale ignores language at the end of the sentence providing that the devolution is "subject to . . . administration." *Id.* Moreover, the opening sentence of the statute provides that, "the rights of . . . heirs to the person's property are subject to the restrictions and limitations contained in this code to facilitate the prompt settlement of estates." *Id.* Thus, while the real property devolves at death, it devolves subject to the

personal representative's statutory power to sell the real property as explicitly granted by SDCL 29A-3-715(a)(6) & (23). Dale's interpretation of the statute would render the statutory power of sale meaningless, violating rules of statutory construction. *See Stratmeyer v. Stratmeyer*, 1997 S.D. 97, ¶ 16, 567 N.W.2d 220, 223 (providing that statutes are to be considered as a whole as well as other enactments relating to the same subject); *Dakota Plains Ag Center, LLC v. Smithey*, 2009 S.D. 78, ¶ 47, 772 N.W.2d 170, 185–86 (stating that this Court must read statutes with the underlying assumption that the legislature did not insert surplusage into its enactments).

### Power of Sale as Affected by Requirements of Distribution in Kind or for Partition of Real Property

[¶22.] SDCL 29A-3-906(a) requires assets of the estate to be distributed in kind "to the extent possible . . .." Under SDCL 29A-3-906(b), the personal representative must deliver a proposed distribution to the distributees, giving them fourteen days to object on the basis of the kind or value of the assets to be received. Dale argues that lack of compliance with the requirement of in kind distribution and with the notice to object provision of the statute deprived Campbell of the power of sale over the real property.

[¶23.] The North Dakota Supreme Court has reviewed the requirements of that state's counterpart to SDCL 29A-3-906(a) and held that, while the provision expresses a "preference" for in kind distributions, it allows distribution of the residuary of the estate in "any equitable manner" and, therefore, "grants more authority to the court, not less." *Estate of Zimbleman*, 539 N.W.2d 67, 72-73 (N.D. 1995) (citing Uniform Probate Code § 3-906 cmt. (1998) in noting that the section

establishes a preference for distribution in kind, but directs the personal representative to convert assets to cash only where there is a special reason for doing so). *See also Estate of Haynes*, 594 A.2d 1112 (Me. 1991) (holding under § 3-906 that a probate court's discretion in distributing estate assets is broad and may include physical partition, sale, distribution in kind, or some combination of these remedies). In *Zimbleman*, the North Dakota court found no error of law in the lower court's order to sell real property where that court found distribution in kind was neither practicable nor workable, and was not desired by the heirs. Based upon similar findings by the circuit court here, there was no error in its order confirming the sale of the real property.

[¶24.] With regard to the notice to object requirement of SDCL 29A-3-906(b), Dale was given notice of Campbell's intention to sell the real property and actually did object to the sale by seeking to enjoin it and, later, at a hearing on his objections. The hearing was held on August 20, 2007, when the closing on the sale of the real property was still contingent on court approval and could have been stopped if the court so ordered. Dale's objections to the sale were largely based on allegations of lack of compliance with SDCL 29A-3-911 concerning the partition of real property to be distributed to the heirs of an estate. However, the real property here was not partitioned among the heirs, but was simply sold to a third party as permitted by SDCL 29A-3-906(a). Thus, lack of compliance with partition requirements posed no barrier to the court's approval of the sale.

[¶25.]     Based upon the foregoing, Campbell's power of sale was not limited by the requirements of distribution in kind or for the partition of real property in an estate.

[¶26.]     **2.     Whether the special administrator was required to offset certain indebtedness of Wayne's trust to the estate against the inheritance of Wayne's three children.**

[¶27.]     Dale argues that because Wayne's three children were beneficiaries of Wayne's trust as well as heirs of Doris's estate, Campbell was required to offset mortgage debt the trust allegedly owed to the estate against the inheritance of Wayne's three children. In support of his argument, Dale cites SDCL 29A-3-903 which requires "noncontingent indebtedness" of a successor to the estate to be offset against the successor's interest in the estate.

[¶28.]     Dale ignores the only evidence in the record concerning the mortgage debt reflects that, if it existed at all, it was indebtedness owed by *Wayne's trust* to the estate, *not Wayne's children*. The children were simply beneficiaries of the trust. Generally, "the contracts of the trustee made in due course of performance of his trust do not render the beneficiary liable to the creditor at law or in equity . . .." George Gleason Bogert, *The Law of Trusts and Trustees* § 721 (Rev. 2d ed. 1982). *See also* Austin Wakeman Scott, *The Law of Trusts* § 274 (3rd ed. 1967) (stating that, "[t]he beneficiaries of a trust are not subject to personal liability to third persons on obligations incurred by the trustee in the administration of the trust."); *Ovrevik v. Ovrevik,* 527 S.E.2d 586, 590 (Ga. Ct. App. 2000) (holding that a trust is responsible for its own expenses and neither a trustee nor a beneficiary is personally liable on a judgment against a trust).

[¶29.] Dale offers no theory on how Wayne's children, as beneficiaries of Wayne's trust, could be held personally liable to Doris's estate for the mortgage debt allegedly owed by the trust to the estate. Neither of the cases Dale cites in support of this argument involved holding trust beneficiaries responsible for a trust's debt to an estate. *See In re Estate of Fauskee*, 497 N.W.2d 324 (Minn. Ct. App. 1993) (where the debt resulted from two promissory notes executed by the beneficiary to the decedent); *Estate of Randeris v. Randeris*, 523 N.W.2d 600 (Iowa Ct. App. 1994) (where the beneficiary was indebted directly to the decedent). Accordingly, there is no foundation for Dale's claim that Wayne's children had a noncontingent indebtedness to the estate that was required to be offset against their interests in the estate.

[¶30.] **3. Whether the special administrator breached his duty to inquire into certain debts allegedly owed to the estate by Wayne's trust.**

[¶31.] The special administrator has "the duties . . . prescribed in the order [of appointment]." SDCL 29A-3-617. The court's order appointing Campbell special administrator directed him to inquire into "the history and status of the debt of Wayne Laue to his parents and the disposition of the cemetery lots in California." Dale argues Campbell failed to comply with this duty.

[¶32.] Campbell was appointed special administrator in December 2006. In April 2007, he petitioned to forego potential claims to some real estate in California and for the value of some cemetery lots in that state. The real estate claim was related to Wayne's parents' sale of a home in California to Wayne. The parents allegedly retained a mortgage on the home which Wayne later sold, using the proceeds to purchase a different residence. Wayne allegedly retained the

outstanding debt to his parents in his divorce from his wife, Jodi. Significantly, Campbell's petition stated he had seen no evidence of a note or evidence of a right to trace a note to the second residence or that any obligation existed on Jodi's part. Campbell also reported Dale's brother, Bryan, believed it was his parents' intention to forgive the loan to Wayne.

[¶33.] Campbell identified a number of problems in attempting to pursue an action on the alleged real estate claim including: lack of evidence; connecting the loan to the second residence; expiration of the statute of limitations; and laches. Campbell also expressed concerns over further delay in filing tax returns and the cost and expense to the estate of pursuing an action in California. Based upon these considerations, Campbell requested authorization to abandon any claims to the California realty.

[¶34.] As to the cemetery lots, Campbell indicated they were transferred by Wayne's father, Richard, to Wayne in 2000, and were currently held by Wayne's trust. The estate's claim to the lots was that Richard may have transferred them involuntarily and without Doris's consent in violation of California law. Campbell also identified a number of problems in pursuing a claim on the lots including: that the lots may not have been community property because Richard and Doris were not California residents; Doris may have actually consented to the transfer; expiration of the statute of limitations; laches; and Richard's estate would be a potential defendant in the action. Again, Campbell expressed concerns over the cost and expense to the estate of pursuing an action in California when the lots were

valued at $2,500. Like the realty claim, Campbell requested authorization to abandon any claims to the cemetery lots.

[¶35.] Campbell's petitions were heard on April 30, 2007, and the court entered orders the next month approving abandonment of the claims for the reasons set forth in the petitions. The court found abandonment of the real estate claim was in the best interests of the estate because of the cost of pursuing the matter in the absence of any evidence of a note tracing the loan proceeds to the California realty.[1] The court also found it in the best interests of the estate to abandon the claim to the cemetery lots because the costs of pursuing the claim would be substantially greater than the $2,500 value of the lots.

[¶36.] Dale petitioned to vacate the circuit court's orders approving abandonment of the claims, raising a number of additional allegations concerning the merits of the claims. Campbell reviewed the additional information provided by Dale and continued to recommend abandonment of the claims, largely for the reasons previously expressed. Dale's petitions to vacate were heard in June 2007. The court subsequently entered orders denying the petitions, finding the cemetery lots were "not worth the fight" and that all of the evidence suggested whatever debt Wayne had owed his parents had been forgiven.

[¶37.] Based upon the foregoing, and contrary to Dale's assertions, we hold that Campbell made reasonable efforts to comply with the order to inquire into the history and status of Wayne's debt to his parents and the disposition of the

---

1. It appears the last best estimate of the balance due on the alleged real estate mortgage would have been $41,216 at the time of Wayne's death in 2000.

cemetery lots. Campbell looked into these issues and reported to the court on not only one, but two occasions. The court agreed with Campbell's assessment of the viability of the claims on not only one, but two occasions. Dale's contentions that Campbell failed to comply with the court's order are, therefore, lacking in merit.

[¶38.] **4. Whether the circuit court had jurisdiction to compel answers to Dale's requests for admissions.**

[¶39.] During the litigation over the estate's abandonment of the California real estate and cemetery lot claims, Dale served a set of requests for admissions on each of the four trustees of Wayne's trust. Each set of requests sought the trustee's admission that Wayne's parents never signed documents forgiving Wayne's debt on the California real estate. Each set also sought the trustee's admission as to the genuineness of two separate lists of trust debts mentioning a real estate debt to Wayne's father.[2] Each trustee filed a "Declaration" declining to respond to the requests for admissions on the basis that Dale had no standing to issue them and that the trust was not a party in the estate proceedings.

[¶40.] Dale filed a motion to compel responses to the requests for admissions. Following a hearing, the circuit court denied the motion, finding it had no jurisdiction over the California trust or trustees and that neither the trust nor the trustees were parties to the action. Dale argues the trustees waived any argument over jurisdiction by filing their "Declarations."

---

2. One list mentioned a debt to Wayne's father for the California real estate and the other indicated the debt had been forgiven. Thus, even if genuine, the lists were inconclusive evidence as to the debt for the realty. Moreover, the lists were eventually admitted as evidence in any event and appear as exhibits in the record and attachments to the briefs.

[¶41.]     "Unless specifically provided to the contrary" or "unless inconsistent with its provisions" the rules of civil procedure apply to proceedings under the Uniform Probate Code. SDCL 29A-1-304. Thus, the provisions of SDCL 15-6-36(a) & (b) on requests for admissions are applicable in probate proceedings. SDCL 15-6-36(a) permits a "party" to serve requests for admissions "upon any other *party* . . .." (Emphasis added). The purpose of the rule, "is to define and limit the matters in controversy between the *parties*." 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2252 (3d ed. 2010) (emphasis added). Neither Wayne's trust nor the trustees of the trust were *parties* in this estate case.[3] Thus, neither the trust nor the trustees had any standing to limit the matters in controversy between the *parties*. It follows that Dale had no authority whatsoever under SDCL 15-6-36(a) to serve requests for admissions on the trust or trustees and neither the trust nor the trustees could be compelled to respond to the requests. Accordingly, the circuit court appropriately denied Dale's motion to compel responses.

## Appellate Attorney's Fees

[¶42.]     The estate filed a motion for appellate attorney's fees in the amount of $9,953.40. The motion is accompanied by an itemized statement of costs incurred and legal services rendered as required by SDCL 15-26A-87.3. "'SDCL 15-26A-87.3 permits an award of appellate attorney's fees if they are otherwise allowable . . ..'" *In re Estate of Seefeldt,* 2006 S.D. 74, ¶ 22, 720 N.W.2d 647, 654 (quoting *Shaefer ex rel. S.S. v. Liechti,* 2006 S.D. 19, ¶ 20, 711 N.W.2d 257, 264). "SDCL 29A-3-720

---

3. One of the trustees was a beneficiary of Doris's estate. However, Dale's requests for admissions from the trustee were served upon him in his capacity as a trustee, not as a beneficiary or party to the estate case.

permits an award of beneficiary's attorney's fees when the services resulted 'in a substantial benefit to the estate.'" *Seefeldt*, 2006 S.D. 74, ¶ 22, 720 N.W.2d at 654 (quoting *Wagner v. Brownlee*, 2006 S.D. 38, ¶¶ 14-15, 713 N.W.2d 592, 597). However, SDCL 29A-3-720 is not limited to beneficiaries and also permits an award of attorney's fees, "to *any person* who prosecuted *or defended* an action that resulted in a substantial benefit to the estate." (Emphasis added).

[¶43.] Campbell, acting on behalf of the estate, has successfully defended an action resulting in a substantial benefit to the estate. *See In re Estate of Torgersen*, 711 N.W.2d 545, 555 (Minn. Ct. App. 2006) (noting that the public policy underlying § 3-720 of the Uniform Probate Code recognizes that an estate as an entity is benefited when genuine controversies as to the validity or construction of a will are litigated and finally determined (citing *In re Estate of Flaherty*, 484 N.W.2d 515, 518 (N.D. 1992))). Accordingly, we grant the estate appellate attorney's fees of $9,953.40.

[¶44.] Affirmed.

[¶45.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, participating.