#27919-a-SLZ

**2017 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ESTATE OF LESTER BRONSON, Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CARMEN MEANS
Judge

* * * *

LEE SCHOENBECK
JOSHUA G. WURGLER of
Schoenbeck Law, PC
Watertown, South Dakota

Attorneys for appellants
Debra Mills and Gloria
Sichmeller.


THOMAS F. BURNS
Watertown, South Dakota

Attorney for appellee
Leslie Bronson, Personally and
as Personal Representative of
the Estate.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2017

OPINION FILED **03/22/17**

#27919

ZINTER, Justice

[¶1.]          Lester Bronson executed a power of attorney appointing his son, Leslie "Butch" Bronson, as his attorney-in-fact. Several years later, at Lester's request, the bank added Butch as a joint owner on one of Lester's bank accounts. On the day of the transaction, Lester was allegedly physically unable to sign his name to the required bank form, so Butch signed Lester's name while they were together in the bank employee's office. After Lester died, his daughters brought claims on behalf of his estate against Butch to recover the account balance together with exemplary damages. The daughters contended that in signing Lester's name, Butch was exercising his power of attorney and had engaged in impermissible self-dealing. After a court trial, the circuit court dismissed the daughters' claims. The court found that Butch signed Lester's name as an amanuensis rather than exercising the power of attorney. The daughters appeal. We affirm.

*Facts and Procedural History*

[¶2.]          In 2003, Lester executed a power of attorney appointing Butch as his attorney-in-fact. At that time, Lester and his wife were the joint owners of a checking account. Lester's wife died in 2004, and in November 2010, he went by himself to the bank where the account was located to remove her name from the account. He met with Nancy Byer, a banker who had worked with him for many years. Lester informed Byer that he also wished to add Butch to the account. Because Butch's signature was needed to be an account holder, Byer called Butch and told him to come to the bank. When he arrived, Byer prepared the form necessary to add him to the account as a joint owner, and she explained the form to

-1-

Lester and Butch. Byer explained that Butch would be able to write checks on the account and that he would be the sole owner of the money in the account upon Lester's death. Lester confirmed that those were his intentions. Byer left Lester and Butch alone in her office for a brief time while she made a deposit. When she returned, the form appeared to have been signed by both Lester and Butch.

[¶3.] Lester died in December 2014. He was survived by his son, Butch, and two daughters, Gloria Sichmeller and Debra Mills. Lester's estate included substantial land and certificates of deposit.* He also had $124,643 in the joint checking account at the time of his death.

[¶4.] After Lester's death, Sichmeller and Mills (Petitioners) brought these claims against Butch for breach of fiduciary duty and conversion. They sought recovery of the checking account balance and exemplary damages. Petitioners asserted that Butch had signed Lester's name on the bank form, which they contended was an act of self-dealing that was not specifically authorized by the power of attorney. Although both Butch and Byer testified in their depositions that Lester had signed the bank form, they were apparently unaware that a handwriting expert had opined that Butch had in fact signed Lester's name. Byer, upon being shown the expert's report at the end of her deposition, then stated that she could not remember who signed Lester's name. Butch continued to believe that Lester signed the form.

---

* Under Lester's will, which he executed in 2013, all of his personal property was to be equally divided among all three children, and the real property was divided approximately equally. The will nominated, and the circuit court appointed, Butch as the personal representative.

[¶5.] The case proceeded to a court trial to determine ownership of the account. The parties stipulated that Butch had signed Lester's name. Over Petitioners' objection, the court admitted oral extrinsic evidence of Lester and Butch's visit to the bank. Butch testified that while at the bank, Lester informed Byer that he wanted Butch on the account so that the balance would go to Butch. Butch also indicated that Lester had severe gout and that parts of the fingers on Lester's right hand were amputated in 2005 or 2006. According to Butch, Lester had difficulty holding a pen whenever his gout flared up. Butch further indicated that Lester's gout was bad on the day the bank form was signed.

[¶6.] Byer also testified at trial, and she described Lester as a man who was meticulous with his money and who knew exactly where he wanted it to go. She testified that it was Lester who wanted to add Butch to the account, that Lester did not want anyone else except Butch on the account, and that Lester wanted the account to go to Butch after Lester died. According to Byer, Butch signed the bank form when all three of them were in her office. She then left her office to deposit money for Lester. While outside her office, she observed Butch trying to put a pen in Lester's hand. When she returned to her office, Lester appeared to have signed the form, but she testified that she did not see Lester sign it. Byer also confirmed that Lester had problems with gout and would occasionally complain about pain in his hands.

[¶7.] After hearing the evidence, the circuit court ruled that Butch was the owner of the funds in the account. Although the parties stipulated that Butch had signed Lester's name on the form, the court found that Butch did not act pursuant

to the power of attorney. Instead, the court found that Butch had acted as "a mere instrument or [amanuensis]" at Lester's request. Petitioners appeal, arguing that Butch obtained joint ownership of the account by engaging in impermissible acts of self-dealing. Petitioners also argue that the evidence was insufficient to support a finding that Butch acted as an amanuensis. Additionally, Petitioners request this Court to require the estate to pay their appellate attorney's fees.

*Decision*

*Amanuensis Doctrine*

[¶8.]      Petitioners' arguments focus primarily on legal principles governing self-dealing by an agent acting pursuant to a power of attorney. Specifically, they contend that: Butch's power of attorney did not authorize him to sign Lester's name on the bank form; signing Lester's name was an impermissible act of self-dealing; and the circuit court erred when it based its ruling on oral extrinsic evidence of the circumstances surrounding the signing.

[¶9.]      It is undisputed that the power of attorney in this case did not give Butch the power to self-deal. We also agree with Petitioners that: "a power of attorney must be strictly construed and strictly pursued," *Bienash v. Moller*, 2006 S.D. 78, ¶ 13, 721 N.W.2d 431, 435; "if the power to self-deal is not specifically articulated in the power of attorney, that power does not exist," *id.* ¶ 14; and oral extrinsic evidence is inadmissible to show that "the attorney-in-fact [had] the power to self-deal when the power of attorney does not explicitly provide such," *Hein v. Zoss*, 2016 S.D. 73, ¶ 10, 887 N.W.2d 62, 66. But these legal principles do not apply here because Butch did not seek to admit oral extrinsic evidence to show that he

had the power to self-deal. Further, Butch did not claim ownership of the money in the account based on a power granted in the power of attorney. Instead, he relied on the amanuensis doctrine and asserted that he signed Lester's name in Lester's presence and at Lester's direction.

[¶10.] It is "well settled, that where the name of a party is signed to an instrument in the presence of the party, and by his authority, and where he knows the contents of the same, the signature will be regarded as the signature of the party whose name purports to be signed to the instrument . . . ." *Hickox v. Bacon*, 17 S.D. 563, 97 N.W. 847, 847 (1903); *see also Nw. Loan & Banking Co. v. Jonasen*, 11 S.D. 566, 79 N.W. 840, 842 (1899) ("The signature of a mortgagor . . . made in his immediate presence by another, with his intelligent acquiescence, is as much his act as though he held the pen."); *Estate of Stephens v. Williams*, 49 P.3d 1093, 1098 (Cal. 2002) ("The attorney in such case, so far as the signature to the instrument is concerned, is a mere amanuensis of the grantor, and in the affixing of the seal is only the instrument, the hand, as it were, of the grantor."); *In re Estate of Moore*, No. 115,628, ___ P.3d ___, ___, 2017 WL 656130, at *7 (Kan. Ct. App. Feb. 17, 2017) ("It is familiar law that where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and has precisely the same validity as if he had written it himself."); *Gaspard v. Iberia Bank*, 953 So. 2d 997, 999 (La. Ct. App. 2007) ("Where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself."); *Jones v. Minton*, 141 So. 2d 564, 565 (Miss. 1962) ("A person may

adopt the writing of another as his individual signature."); *Graff v. Graff*, 138 N.W.2d 644, 650 (Neb. 1965) ("Where a person's name is signed to an instrument for him, at his direction and in his presence, by another, the signature becomes his own."). This doctrine is significant because if it applies, the signing is "not deemed the act of an agent, but is the direct act of the person by whose direction it was done." *United Bonding Ins. Co. v. Banco Suizo-Panameno, S.A.*, 422 F.2d 1142, 1147 (5th Cir. 1970) (applying Florida law); *accord Estate of Moore*, ___ P.3d at ___, 2017 WL 656130, at *15; 80 C.J.S. *Signatures* § 14, Westlaw (database updated Dec. 2016) ("Where a signature is made in this manner, the person writing the name is regarded as a mere instrumentality, by which the person whose signature is written exercises his own discretion and acts for himself, and not through an agent."). The circuit court did not err in recognizing the amanuensis doctrine.

[¶11.]	Nevertheless, Petitioners insist that our law of agency and fiduciary self-dealing must govern this case, or else the law protecting principals will be subverted. We disagree. Applying only the laws of agency and fiduciary self-dealing in a case like this would create an irrebuttable presumption that once a power of attorney is granted, every subsequent act of the attorney-in-fact involves a fiduciary duty of that agent—even if it is an act regarding a matter unconnected to the agency. Petitioners cite no law for such a presumption, and we decline to adopt one. After all, "[t]he law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other." *Bienash*, 2006 S.D. 78, ¶ 11, 721

N.W.2d at 434. "We recognize no 'invariable rule' for ascertaining a fiduciary relationship, 'but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other.'" *Id.* (quoting *Ward v. Lange*, 1996 S.D. 113, ¶ 12, 553 N.W.2d 246, 250). But here, none of the factors necessary for a fiduciary relationship were present in this banking transaction. The evidence undisputedly indicates that Lester was independently and competently handling his own financial affairs when he went to the bank to request the creation of the joint account.

[¶12.]        We do, however, acknowledge concerns that may arise where the person acting as an amanuensis also has an interest in the transfer or is a fiduciary for the other. We find the California Supreme Court's resolution of those situations instructive. In *Estate of Stephens*, a daughter held a power of attorney for her blind father, whom she cared for and who was dependent on her. 49 P.3d at 1095. The father had a deed drafted to convey real property to the daughter, and he instructed the daughter to sign his name on the deed. *Id.* Because the daughter had an interest in the transfer and had no express written authority to self-deal, the court held that "the signing of a grantor's name by an interested amanuensis must be presumed invalid." *Id.* at 1100. To rebut the presumption, the interested amanuensis had "to show that his or her signing of the grantor's name was a mechanical act in that the grantor intended to sign the document using the

instrumentality of the amanuensis." *Id.* at 1100-01. We agree with the California Supreme Court's concerns and adopt these requirements.

*Sufficiency of the Evidence*

[¶13.] Petitioners contend that because there was no direct evidence that Lester asked Butch to sign for him, and because the circuit court only found that Lester "in some manner" asked Butch to sign, the evidence was insufficient to support a finding that Butch signed as an amanuensis. Petitioners also emphasize discrepancies between Butch's and Byer's deposition and trial testimony. We acknowledge that there was no direct evidence that Lester requested Butch to sign for him. But "[d]irect and circumstantial evidence have equal weight." *State v. Webster*, 2001 S.D. 141, ¶ 13, 637 N.W.2d 392, 396. Additionally, "[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Baun v. Estate of Kramlich*, 2003 S.D. 89, ¶ 21, 667 N.W.2d 672, 677. This Court will only overturn findings of fact on appeal for clear error; i.e., "when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333, 336.

[¶14.] Here, the circuit court did not clearly err in finding that Butch acted as a mere amanuensis. It is significant that there is no claim that Butch obtained ownership of the account through fraud, duress, or undue influence; and there is no claim that anyone other than Lester desired to add Butch as a joint owner. Indeed, Lester was described as a man who was very meticulous with his money and who

knew exactly what he had and where he wanted it to go. Additionally, there was evidence that Lester wanted to add Butch to the account as a joint owner, Lester went to the bank alone to do so, and Lester directed the bank to prepare the paperwork necessary to accomplish his wishes. Butch then went to the bank only after Byer called him and told him to come because all joint-account holders' signatures were required on joint accounts. Once Butch arrived, Byer explained the bank form to Lester and Butch, and Lester confirmed that he wanted Butch to be the sole owner of the account upon Lester's death. There was also evidence that Lester had gout, which made it difficult for him to use a pen. This circumstantial evidence, together with the testimony that both Lester and Butch were present, side by side in Byer's office, when the form was signed, supports the circuit court's decision. The evidence supports a finding that Butch's "signing of [Lester's] name was a mechanical act in that [Lester] intended to sign the document using the instrumentality of the amanuensis." *See Estate of Stephens*, 49 P.3d at 1100-01. It also supports a finding that the form was signed in the "presence of [Lester], and by his authority, and where he [knew] the contents of the same." *See Hickox*, 97 N.W. at 847.

[¶15.] We conclude that the circuit court did not clearly err in finding that Butch was not exercising his power of attorney when he signed Lester's name; rather, he was acting as an amanuensis. Thus, the circuit court did not err in rejecting Petitioners' claims and ruling that Butch was the owner of the funds in the account.

*Appellate Attorney's Fees*

[¶16.]    Petitioners move this Court for an order requiring their appellate attorney's fees be paid from the estate. "SDCL 15-26A-87.3 permits an award of appellate attorney's fees if they are otherwise allowable." *In re Estate of Laue*, 2010 S.D. 80, ¶ 42, 790 N.W.2d 765, 774. Under SDCL 29A-3-720, a personal representative "who defends or prosecutes any proceeding in good faith, whether successful or not, is entitled to . . . reasonable attorney's fees"; all other persons may receive attorney's fees only if they "prosecuted or defended an action that resulted in a substantial benefit to the estate."

[¶17.]    Because Petitioners' action did not result in a substantial benefit to the estate, they are not entitled to fees under the "all other persons" portion of the statute. However, Petitioners contend that because they brought this action on behalf of Lester's estate, they are entitled to attorney's fees whether successful or not under the "personal representative" portion of the statute. Petitioners contend that in suing the appointed personal representative on behalf of the estate, they "stepped into the shoes of the personal representative." But the circuit court never appointed Petitioners as personal representatives or special administrators of Lester's estate. Under SDCL 29A-3-601 and SDCL 29A-3-614(2), personal representatives or special administrators of the estate must be appointed by the court. Although the parties stipulated that Petitioners could bring this action against Butch on behalf of the estate, that private-party stipulation did not make them "personal representatives" within the meaning of SDCL 29A-3-720. Therefore, we deny Petitioners' motion for appellate attorney's fees.

[¶18.]    Affirmed.

[¶19.]    GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN,

Justices, concur.