#28819-a-DG
**2019 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| ESTATE OF KENNETH STOEBNER, | Plaintiff and Appellee, |
| v. | |
| CURTIS HUETHER, | Defendant and Appellant. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

| | |
|---|---|
| TIMOTHY R. WHALEN<br>Lake Andes, South Dakota | Attorney for plaintiff and appellee. |
| TAMARA D. LEE<br>Yankton, South Dakota | Attorney for defendant and appellant. |

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 26, 2019
OPINION FILED **10/23/19**

GILBERTSON, Chief Justice

[¶1.]        Curtis Huether served as Kenneth Stoebner's attorney-in-fact under a power of attorney.  Pursuant to this role, Huether executed a sale of Stoebner's real property to himself four days before Stoebner's death.  Stoebner's estate (Estate) subsequently brought a breach of fiduciary duty claim against Huether for engaging in an act of self-dealing.  The Estate moved for summary judgment, which the circuit court granted.  We affirm.

## Facts and Procedural History

[¶2.]        Stoebner and Huether were first cousins who knew each other their entire lives.  They were both farmers and occasionally assisted each other with farm work.  Stoebner was eight years older than Huether, never married, and did not have any children.  In 2012, when he was 82 years old, Stoebner entered a nursing home and was confined to a wheelchair.  During Stoebner's stay at the nursing home, Huether and his son, Sheldon, visited Stoebner every one to two weeks, took him to the farm for visits, and assisted with other tasks.  For instance, Huether handled the entirety of a farm sale for Stoebner in 2013.  In approximately February 2012, Huether began leasing Stoebner's farmland.  Huether continued leasing the farmland for the next five years.  The last lease was signed by Stoebner in February 2017, four months before his death.  This property is the subject of the contested transaction and current appeal.

[¶3.]        Several months after entering the nursing home, Stoebner met with his attorney, James Haar, to discuss the preparation of a power of attorney.  Haar performed legal work for Stoebner since the late 1960s, assisting him with tax

preparation, drawing up leases, handling the probate of his mother's estate, and drafting his will. Stoebner requested that Haar be his attorney-in-fact, but Haar declined. Haar prepared a General Durable Power of Attorney and Durable Power of Attorney for Health Care for Stoebner, naming Huether as Stoebner's attorney-in-fact. The power of attorney allowed Huether to act as Stoebner's agent. In part, it allowed Huether "[t]o acquire, purchase, exchange, grant options to sell, and sell and convey real or personal property, tangible or intangible, or interests herein, on such terms and conditions as my agent will deem proper." It also allowed Huether to manage real property in Stoebner's name and benefit upon such terms Huether deemed proper. Stoebner and Huether signed the document on August 6, 2012.

[¶4.] According to Huether, in 2016 he began having Stoebner's mail sent to him instead of the nursing home, and he took on full responsibility for paying Stoebner's bills. Huether would ask Stoebner to review a bill only if he had a question about it. At the time, Huether paid Stoebner's bills from Stoebner's checking account and replenished the account by cashing Stoebner's certificates of deposit (CDs).

[¶5.] As Stoebner's assets depleted, Huether contends that he discussed with Stoebner how to obtain funds to continue paying his bills by using Stoebner's farmland. He states that he suggested two options to Stoebner: (1) auction his farmland or (2) allow the nursing home to obtain a lien on his property. Huether claims that Stoebner declined these options and instead wanted Huether to purchase the land in exchange for the help he had given him.

[¶6.]	Huether visited Haar in February 2017 to discuss how to arrange the sale of Stoebner's farmland. Haar refused to get involved, advising Huether that he should not purchase the land and instead should mortgage the property. Haar also stated that while the transaction was not necessarily illegal, there was a strong possibility that Huether would be sued by other family members. Huether then asked another attorney, Keith Goehring, if he would assist with the sale of the land. Goehring also declined because he considered Haar a friend. Huether then went to attorney Tamara Lee, who agreed to prepare the purchase agreement and warranty deed. Lee had never performed legal work for Stoebner before.

[¶7.]	In June 2017, Huether had the land appraised. A certified appraiser estimated the value of the land to be $720,000. Based on this appraisal, along with a real estate assessment that the Hutchinson County Department of Equalization issued assessing the value of the property at $374,397, and the advice of an accountant, Huether claims he and Stoebner agreed on a purchase price of $350,000. However, Huether's payment for the land would be in the form of payment of Stoebner's expenses up to the purchase price. The purchase agreement provided:

> Consideration and Payments. In consideration of Seller's transfer of the above-described real property to Purchaser, in addition to continuing to provide companionship and to assist Seller with Seller's daily business needs, Purchaser agrees to pay medical expenses, costs of care, and costs of living expenses on behalf of Seller, up to a cumulative total that does not exceed Three Hundred and Fifty Thousand Dollars ($350,000).

The agreement also provided that Huether's responsibility to pay for the land would extinguish upon Stoebner's death, even if Huether had not paid the full price:

> Death of Seller. Upon the death of Seller, all obligations of
> Purchaser under this Agreement to pay monies to service
> providers shall cease, regardless of whether the total sum of
> Three Hundred Fifty Thousand Dollars ($350,000) has been paid
> by Purchaser at that point.

[¶8.] On June 26, 2017, Huether took the purchase agreement and deed to a bank to sign before a notary. Huether signed for himself as the purchaser and for "Kenneth Stoebner by Curtis Huether POA" as the seller. Huether claims he asked the notary if Stoebner was required to be present, but the notary said it was not necessary. The purchase agreement and deed were also accepted by the register of deeds and the Farm Services Administration office. Stoebner passed away on June 30, 2017, four days after the sale. In total, Huether claims he paid approximately $20,000 pursuant to the agreement. This total consisted of services related to expenses for the sale of the land, such as the cost of the appraisal, and the last days of Stoebner's care, including medical and funeral costs.

[¶9.] Stoebner's Estate commenced this action for breach of fiduciary duty, alleging that Huether "breached his fiduciary duty to Stoebner by engaging in an act of self-dealing when he executed [the purchase agreement and warranty deed] in his favor as the attorney-in-fact for Stoebner because such act was not for the benefit of Stoebner, but only benefitted the Defendant." The Estate requested that the sale be rendered null and void and the property conveyed back to the Estate. In the alternative, the Estate alleged that Huether had committed an act of conversion

by depriving "the beneficiaries of the Last Will and Testament of Stoebner . . . of their inheritance."[1]

[¶10.]     The Estate moved for summary judgment as to its first claim that Huether breached his fiduciary duty to Stoebner. The Estate argued that it was undisputed that a fiduciary relationship existed between Stoebner and Huether due to Huether's role as attorney-in-fact and the reliance and trust Stoebner placed in Huether to take care of his affairs while he was in the nursing home. Furthermore, the Estate argued, it was undisputed that the power of attorney did not contain any provisions allowing Huether to self-deal. The Estate also disagrees with Huether's contention that he was acting at Stoebner's oral direction as Stoebner's amanuensis by signing the purchase agreement, rather than as Stoebner's attorney-in-fact.

[¶11.]     Beyond that, the Estate pointed out that the circumstances of the sale indicated Huether was acting in only his best interests to the detriment of Stoebner by selling Stoebner's land to himself. Among these circumstances was Huether's deposition testimony that he had known for six months prior to the sale that Stoebner was suffering from cancer, that Stoebner was unable to physically care for himself, and that Stoebner had never reviewed the purchase agreement or known the final purchase price for his land.

[¶12.]     Huether argued that there was insufficient evidence produced by the Estate that a fiduciary relationship existed at the time the purchase agreement was

---

1.     Stoebner's will, drafted in 1990, listed eight charities as beneficiaries. Stoebner did not provide any bequests to his family members, and Haar was named as the personal representative of the Estate. The property in question was Stoebner's last remaining asset before the sale to Huether.

signed. Even if such a relationship existed at the time of the sale, he argued he was acting in the best interests of Stoebner and was undertaking the transaction to ensure that Stoebner's needs continued to be met. Huether further claimed that although the power of attorney did not explicitly allow him to self-deal, it did allow him to purchase and sell real property, thus granting him the authority to undertake the sale of Stoebner's land to himself under these circumstances.[2]

[¶13.]    In support of his arguments, Huether relied on several affidavits submitted seven months after his deposition. In his first affidavit, Huether contended that Stoebner was not in the nursing home because he was in a frail condition physically, but because he "needed assistance with activities of daily living." He stated that he had, in fact, discussed the terms of the sale with Stoebner and had taken the contract to him to review prior to it being signed. He also contended that he had not been aware of Stoebner's cancer diagnosis until six weeks before his death, not six months, and that his death had been a "surprise."

[¶14.]    Huether also submitted a correction sheet after reviewing the deposition transcript, indicating changes to his answers regarding when he knew of Stoebner's cancer diagnosis and that he had reviewed the contract with Stoebner. A second affidavit from Huether indicates he changed his deposition answers because he remembered the correct answers after discussing the matter with his attorney and Sheldon. Sheldon also submitted an affidavit supporting these changes to Huether's testimony, stating that he was familiar with Stoebner's condition and

_____

2.    Huether also brought a counterclaim for compensation of expenses he incurred on behalf of Stoebner. We express no opinion on that outstanding counterclaim.

present during the conversations Huether and Stoebner had about the land sale. The Estate argued that Huether was impermissibly attempting to change his deposition testimony and could not explain the changes to his answers.

[¶15.] The circuit court heard oral argument from the parties. It issued an order granting summary judgment to the Estate on October 29, 2018, determining that there was no genuine issue of material fact as to the breach of fiduciary duty claim. The court ordered the sale be declared null and void and reinvested the Estate with the right of ownership to the property.[3] Huether appealed, raising one issue: whether the circuit court erred in granting summary judgment to the Estate.

**Standard of Review**

[¶16.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700 (quoting *Wyman v. Bruckner*, 2018 S.D. 17, ¶ 9, 908 N.W.2d 170, 174). When conducting a de novo review, "[w]e give no deference to the circuit court's decision[.]" *Oxton v. Rudland*, 2017 S.D. 35, ¶ 12, 897 N.W.2d 356, 360. "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Brandt v. Cty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). "Unsupported conclusions and speculative statements do not raise a genuine issue of fact." *Dakota Indus., Inc. v. Cabela's.com, Inc.*, 2009 S.D. 39, ¶ 20, 766 N.W.2d 510, 516. "[T]his Court will affirm the circuit court's

_____

3. At the hearing, the circuit court left open the ability for Huether to make claims against the Estate for reimbursement of expenses incurred after Stoebner's death.

#28819

ruling granting a motion for summary judgment if any basis exists to support the ruling." *Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, ¶ 9, 817 N.W.2d 395, 399 (quoting *Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 19, 757 N.W.2d 756, 762).

## Analysis and Decision

[¶17.] Fiduciary relationships are built on trust and reliance one places in another to faithfully act for the benefit of the other. *Bienash v. Moller*, 2006 S.D. 78, ¶ 11, 721 N.W.2d 431, 434. These kinds of relationships are not typical business relationships, but are created

> where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other. We recognize no "invariable rule" for ascertaining a fiduciary relationship, "but it is manifest in all the decisions that there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other."

*Id.* (quoting *Ward v. Lange*, 1996 S.D. 113, ¶ 12, 553 N.W.2d 246, 250). Whether a fiduciary relationship exists and the scope of the duty are questions of law, while breach of that duty is a question of fact. *Id.* ¶ 12, 721 N.W.2d at 434. Importantly, "as a matter of law, a fiduciary relationship exists whenever a power of attorney is created." *Hein v. Zoss*, 2016 S.D. 73, ¶ 8, 887 N.W.2d 62, 65 (quoting *Estate of Duebendorfer,* 2006 S.D. 79, ¶ 26, 721 N.W.2d 438, 445).

[¶18.] Huether contends there is insufficient evidence of a fiduciary relationship present at the time the contract was signed because there is not adequate evidence of Stoebner's dependence and inability to fully protect his own interests. However, a power of attorney was clearly in effect at the time of the sale

and Huether used his authority as an attorney-in-fact to carry out the sale, meaning Huether, as a matter of law, owed a fiduciary duty to Stoebner. Beyond that, the undisputed evidence indicates that Stoebner placed a high degree of trust in Huether, relying on him to take care of all his financial matters beginning in at least 2016. This control Huether exercised over Stoebner's assets, coupled with Stoebner's inability to see to all aspects of his physical needs, placed Stoebner in a state of dependence on Huether and created an unequal relationship.

[¶19.] Next, we must look to the extent of Huether's authority under the power of attorney to determine whether Huether breached his fiduciary duty. Powers of attorney "must be strictly construed and strictly pursued." *Bienash*, 2006 S.D. 78, ¶ 13, 721 N.W.2d at 435 (quoting *In re Guardianship of Blare*, 1999 S.D. 3, ¶ 14, 589 N.W.2d 211, 214). Because fiduciaries must strictly avoid any acts of self-dealing, the authority to self-deal exists only if the power of attorney provides "clear and unmistakable language" specifically authorizing acts of self-dealing. *Id.* ¶ 14, 721 N.W.2d at 435. "Self-dealing occurs when an agent pits their personal interests against their obligations to the principal." *Wyman,* 2018 S.D. 17, ¶ 23, 908 N.W.2d at 177. Self-dealing is precluded "even when the language of a power of attorney might logically entail the ability to self-deal" if there is no explicit provision allowing it. *Id.* ¶ 22, 908 N.W.2d at 177.

[¶20.] Huether contends that the power of attorney granted him the ability to buy and sell real estate in the context of this transaction and, in any event, a dispute of material fact exists regarding the interpretation of its provisions. However, we have clearly stated that "[c]ases involving the interpretation of written

documents are particularly appropriate for disposition by summary judgment, such interpretation being a legal issue rather than a factual one." *Id.* ¶ 9, 908 N.W.2d at 174.

[¶21.]     Arguing that he had the authority to carry out this sale, Huether points to language allowing him to "acquire," "sell," and "purchase" real property as Stoebner might have, and an ability for Huether to "in any manner deal with any real or personal property . . . ." We have rejected similar arguments urging us to imply the right to self-deal under similar grants of authority. For instance, in *Wyman*, we held that an attorney-in-fact's power to "give or receive [property] as a gift" did not include the power to give the principal's property to herself or her family in the absence of clear language allowing self-dealing. *See id.* ¶¶ 21, 23, 908 N.W.2d at 177. Here, there is simply no "clear and unmistakable" language in the document allowing Huether to self-deal or personally benefit from his fiduciary role by selling Stoebner's real property to himself. Furthermore, there is no question that this was an act of self-dealing and thus a breach of fiduciary duty. On the face of this transaction, Huether benefitted by obtaining title to Stoebner's property, for less than market value and on payment terms that were favorable to Huether, by using his power as Stoebner's attorney-in-fact.

[¶22.]     Huether argues that further disputes of fact exist regarding his intentions for carrying out the transaction. Even if there was a fiduciary relationship, Huether argues, there are issues of fact regarding whether he acted for the benefit of Stoebner by offering consideration for the land in the form of payment

of Stoebner's bills. Huether also argues that a dispute exists as to whether Stoebner reviewed and approved the purchase agreement.

[¶23.]     Huether attempts to generate an issue of fact regarding the circumstances of the sale by producing written affidavits that do not actually generate issues of material fact rebutting the language of the power of attorney. We have adopted a bright-line rule that no oral extrinsic evidence may be introduced to raise a factual issue as to whether an attorney-in-fact was authorized to self-deal under a power of attorney. *Bienash,* 2006 S.D. 78, ¶ 27, 721 N.W.2d at 437. We have not precluded the introduction of written evidence providing such authority, but a written document must clearly articulate that the fiduciary is authorized to engage in self-dealing. *See id.* ¶ 25, 721 N.W.2d at 437. We have also stated that affidavits are insufficient written evidence because they are "merely oral evidence reduced to writing." *Studt v. Black Hills Fed. Credit Union,* 2015 S.D. 33, ¶ 14, 864 N.W.2d 513, 517. No written evidence has been introduced that clearly articulates that Stoebner authorized this act of self-dealing.[4] Regardless of Huether's

---

4.     The Estate contends that Huether's breach of his fiduciary duty is demonstrated by his own deposition testimony and written documents in the record, and all attempts by Huether to create disputed issues through his affidavits are inadmissible attempts to contradict his own sworn testimony. Generally, one cannot "claim a version of the facts more favorable than they gave in their deposition[]." *Johnson v. Matthew J. Batchelder Co., Inc.,* 2010 S.D. 23, ¶ 11, 779 N.W.2d 690, 694. As such, we prohibit the "consideration of affidavits contradicting a witness's prior deposition testimony . . . 'when there is no explanation for the change in testimony from the deposition to the affidavit.'" *Id.* ¶ 12, 779 N.W.2d at 694 (quoting *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 503 (S.D. 1990)). Affidavits are permissible "if they provide an 'explanation for the change in testimony or a showing that the answers were ambiguous and the affidavit clarified them.'" *Id.* (quoting *Carpenter v. City of Belle Fourche,* 2000 S.D. 55, ¶ 26, 609 N.W.2d 751, 762).

(continued . . .)

intentions and even if Stoebner approved of the transaction, there is no admissible written evidence supporting Huether's ability to self-deal.

[¶24.]     However, these principles regarding the introduction of oral extrinsic evidence do not apply if an attorney-in-fact is not acting in that capacity at the time of the transaction, but rather as an amanuensis. *Estate of Bronson*, 2017 S.D. 9, ¶ 9, 892 N.W.2d 604, 607-08. The doctrine of amanuensis applies "where the name of a party is signed to an instrument in the presence of the party, and by his authority, and where he knows the contents of the same." *Id.* ¶ 10, 892 N.W.2d at 608. In such a situation, the signature of the amanuensis is treated as the signature of the person directing the amanuensis. *Id.* Furthermore, the act is not considered to be the act of an attorney-in-fact, but the act of the person through the amanuensis. *Id.*

[¶25.]     For example, we applied this doctrine in *Bronson*, where a father and his son, who was the father's attorney-in-fact, went to a bank to add the son as a joint owner to the father's checking account. *Id.* ¶ 2, 892 N.W.2d at 606. While there, the son signed documents as his father because severe gout was preventing the father from holding a pen. *Id.* ¶ 5, 892 N.W.2d at 607. We determined that extrinsic evidence to rebut a presumption of self-dealing by the son in this

---

(. . . continued)

We have held that newly discovered evidence provides a good explanation for the changed testimony. *Id.* ¶ 13, 779 N.W.2d at 694. In contrast, explanations that are "simply conclusory" do "not provide a proper basis to contradict, modify, or recant the explicit prior" testimony. *DFA Dairy Fin. Servs., L.P. v. Lawson Special Tr.*, 2010 S.D. 34, ¶ 23, 781 N.W.2d 664, 671. Having determined Huether has not introduced any admissible evidence authorizing an act of self-dealing, we need not address whether Huether's reasons for correcting his deposition testimony were adequate explanations.

circumstance was appropriate because the evidence showed the father was independently making his own decisions, meaning the son was not acting as an attorney-in-fact at the time, but rather the father was using the son as an instrument to sign the documents for him. *Id*. ¶ 11-12, 892 N.W.2d at 608-09.

[¶26.] Huether argues that because the purchase agreement was written and allegedly reviewed by Stoebner, "the possibility of this being a written exception to the amanuensis doctrine needs to be further explored at the trial level." However, the Estate asserts that the amanuensis doctrine is inapplicable to the transaction because the evidence does not show that Huether was acting as a mere instrument of Stoebner when he signed the agreement. The circumstances of this agreement indeed do not indicate that Huether was acting as an instrument of Stoebner. Even if Stoebner had been aware of the sale, he was not present for the signing of the contract, and Huether clearly signed as an attorney-in-fact by signing "Kenneth Stoebner by Curtis Huether POA." The amanuensis doctrine, therefore, cannot be used as an exception against the introduction of oral evidence validating an act of self-dealing.

## Conclusion

[¶27.] The circuit court did not err when it granted summary judgment to the Estate. Huether has not demonstrated a genuine dispute of material fact regarding his fiduciary duty to Stoebner to not engage in acts of self-dealing. Having determined that no genuine disputes of material fact exist because Huether violated his fiduciary duty under the provisions of the power of attorney, we need not

#28819

address Huether's various affirmative defenses. The circuit court's order is affirmed.

[¶28.]     KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.